Mr. Justice GRIEB,
 

 delivered the opinion'of the court-
 

 A patent is the highest evidence of title, and is conclusive as against the Government, and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal. In England this was originally done by
 
 scire facias,
 
 but a bill in chancery is found a. more convenient remedy.
 

 Nor is fraud in the patentee the only ground upon which a bill will be sustained. Patents are sometimes issued unadvisedly or by mistake, where the officer has no authority in law to grant them, or where another party has a higher equity and should have received the patent. In such cases courts of law will pronounce them void. The patent is but evidence of a grant, and the officer who issues it acts ministerially and not judicially. If he issues a patent for land reserved from sale.by law, such patent is void for-want of authority. But one officer of the land office is not competenl to cancel or annul the act of his predecessor. That is a j udi-cial act, and requires the judgment of a court.
 

 It is contended here, by the counsel of the United States, that the land for which a patent was granted to the appellant was reserved from sale for the use of the- Government,
 
 *536
 
 and, consequently, that the patent is void. And although no fraud is charged in the bill, we have no doubt that such a proceeding in chancery is the proper remedy, and that if the allegations of the bill are supported, that the decree of the court below cancelling the patent should be affirmed.
 

 The grant to the Delaware Indians in 1829 calls for Camp Leavenworth as a boundary; consequently, the camp, and its appurtenances were not included in the grant. What lands properly belonged to this military post, and the proper curtilage necessary for the use and enjoyment of it not being fixed with precision in the general description of the land granted, could, be ascertained only by a survey on th.e ground.'
 

 The resolution of the Senate of May 29th, 1830, provides that the President should employ a surveyor “to run the lines, and to establish certain and' notorious landmarks accurately and permanently, to distinguish the boundaries of the country granted, in tlie presence of an agent to be designated by the Delaware nation, the surveyor-to make report with a map or draft of the said granted country,” &c. The Secretary of Wrar, by the authority of the President, referred the execution of this duty to a surveyor (McCoy), instructing him “ to be governed in every particular by the treaty and the resolution of the Senate.”
 

 No copy of this .report, with the map approved by the agent of the Delawares, and with the signature and seal of the President., as ‘provided for in the Senate resolution, is found in the War Office, and it does not appear that search was made in the State Department. There is, however, a copy found in the War Office, directed to the Secretary of War, and filed among its documents.
 

 This survey was made in the presence of the agent of the Delawares. It marked the usual quantity of about three miles square, as appurtenant to the post and necessary for its use and subsistence, making the lines thereof the boundary of the grant to the Delawares, with the concurrence and consent of the agent of the nation.. It was made in the year 1830, and since that time both parties have held pos
 
 *537
 
 session and claimed up to the lines then established by the survey. In the ease of private persons, a boundary surveyed by the parties and acquiesced in for more than thirty years, could not be made the subject of dispute by reference to courses and distances called for in the patents under which the parties claimed, or on some newly discovered construction of their title deeds. We see no reason why the same principle should not apply in the present case, notwithstanding the absence or loss of the. document required by the resolution of the Senate.
 

 The authority of'the President, acting through the Secretary of War and his officers, to have posts and forts established, with a proper quantity of ground appropriated for the use of each reserved from sale, is fully discussed and decided in
 
 Wilcox
 
 v.
 
 Jackson.
 

 Tu 1854, a survey was made under orders of the Secretary of War, “including the buildings and improvements, and so much land as may be necessary for military purposes, at Fort Leavenworth.” This survey adopted the southern boundary as run by McCoy, and commenced at the same point. It did not include all the land, reserved by that' survey, but the land now claimed is embraced within its limits. This survey was approved by the President, and the land contained in it formally reserved for military purposes. The survey made of the Delaware lands,, under the treaty of 1854, adopted the McCoy line.
 

 The Secretary of the' Interior, in 1861, transcended his authority when he attempted to overrule the acts of his predecessors, and ordered surveys to be made north of that line to include the land now in question.
 

 We are of opinion, therefore,
 

 1st. That the land claimed by appellant never was within the tract allotted to the Delaware Indians in 1829 and sur-, veyed in 1830.
 

 2d. That it is within the limits of a reservation legally made by the President for military purposes.
 

 Consequently, the patents issued to the appellant were without authority and void. •
 

 
 *538
 
 The- question on the construction of the treaty of 1860, as to whether the grants to the chiefs and interpreter Were to be located within' that portion of these lands which was reserved for their “permanent home,” or in that portion which was to he sold for their use, would be-also fatal to the claim of appellant. But the decision of the other points in the case make this one only hypothetical, and, as it is a question not likely to ever arise again, we think it unnecessary to vindicate our opinion by arguments.
 

 Decree aeeirmed.