## HILKER & BLETSCH CO.
v.
## UNITED STATES.
### No. 10977.

United States Court of Appeals,
Seventh Circuit.

Feb. 26, 1954.

Rehearing Denied March 24, 1954.

John S. Hall, James McKeag, Chicago, Ill., for appellant.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Atty., U. S. Dept. of Justice, Washington, D. C., Irwin N. Cohen, U. S. Atty., Chicago, Ill., Ellis N. Slack, Lee A. Jackson, Karl Schmeidler, Sp. Assts. to Atty. Gen., Otto Kerner, Jr., U. S. Atty., John A. Looby, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff, an Illinois corporation, is engaged in the manufacture and sale of food products, with its principal place of business at 614 West Hubbard Street, Chicago, Illinois. From October 1, 1949 to December 31, 1949, it used 413.842 proof gallons of distilled spirits in the manufacture of flavors and flavoring extracts as foods and not for beverage purposes. The distilled spirits were tax paid and had been produced in a domestic registered distillery or industrial alcohol plant.

Predicated upon Sec. 3250 of the Internal Revenue Code, as amended by Sec. 309(b) of the Revenue Act of 1943, 26 U.S.C.1949 Ed., Sec. 3250, plaintiff brought suit for drawback of taxes in the sum of $2,483.05, which had been paid upon distilled spirits used in the manufac-

ture of food products. The government relied upon the defense that plaintiff's claim was not timely filed. That issue was decided by the district court adversely to plaintiff and a judgment entered for defendant. From such judgment plaintiff appeals. The sole issue in this court is whether the claim was timely filed. If so, the judgment must be reversed; if not, affirmed.

Sec. 3250, so far as material, reads: "Such drawback shall be due and payable quarterly upon filing of a proper claim with the Secretary * * *. No claim under this subsection shall be allowed unless filed with the Secretary within the three months next succeeding the quarter" for which the drawback is claimed. Treasury Regulations 29, Secs. 197.21 and 197.22, issued pursuant to statute, provides that the claim for drawback be filed "with the district supervisor, Alcohol Tax Unit, for the District in which the place of manufacture is located," and repeats substantially in the language of the statute that the claim must be filed "within the three months next succeeding the quarter in which the distilled spirits covered by the claim were used * * *."

There is no dispute as to the facts. The three-month period during which the Commissioner was authorized to allow plaintiff's claim expired Friday, March 31, 1950. On that date, the auditor for plaintiff was driven from plaintiff's place of business to the office of the Alcohol Tax Unit in Chicago for the purpose of filing the claim and, upon his arrival at about 4:35 p. m., found that office closed. Being unable to file the claim, the auditor returned to plaintiff's office, placed the claim in an envelope with proper postage and caused it to be deposited in a United States mailbox shortly before 5:30 p. m. on March 31, 1950. The claim was received in the office of the district supervisor on Monday, April 3, 1950, in an envelope bearing a Chicago postmark stamped 7:30 p. m., March 31, 1950.

The usual business hours of the Alcohol Tax Unit on March 31, 1950, which had been established and which had been observed for a period of six years prior thereto, were from 8 a. m. to 4:30 p. m.

The Commissioner of Internal Revenue in a letter dated May 16, 1950, directed to plaintiff, denied allowance of the claim. This letter, after calling attention to the applicable statute, stated: "The provisions of the law are mandatory in this respect. Therefore, the last day on which this claim could have been filed was March 31, 1950. Since the District Supervisor, Alcohol Tax Unit, Chicago, Illinois, did not receive the claim until April 3, 1950, this office is without authority to grant allowance thereof."

We are left in some doubt from plaintiff's argument whether it relies upon the fact that its attempt to file at 4:35 p. m. on the crucial date was thwarted because the office was closed or upon the fact that the claim was mailed and bore a postmark of March 31. It seems plain, however, from the authorities that the act of mailing is of no aid to plaintiff's contention.

In United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897, the court held that a claim is not filed at the time of its deposit in the United States mail but only when it is received by the proper office. The court stated 241 U.S. at page 76, 36 S.Ct. at page 509: "Filing, it must be observed, is not complete until the document is delivered and received. 'Shall file' means to deliver to the office, and not send through the United States mails. [Citing case.] A paper is filed when it is delivered to the proper official and by him received and filed." In McCord v. Commissioner, 74 App.D.C. 369, 123 F.2d 164, greatly relied upon by plaintiff (subsequently discussed), the court refers to the Western Union and the postal service, both sought to be utilized in making delivery, as the agent of the claimant. A few of the many cases which have held likewise are Lewis-Hall Iron Works v. Blair, 57 App. D.C. 364, 23 F.2d 972, Poynor v. Commissioner, 5 Cir., 81 F.2d 521, and Stebbins' Estate v. Helvering, 74 App.D.C. 21, 121 F.2d 892. Moreover, Treasury Regulations 29, Sec. 197.3(d), defines the

word "Filed" as follows: "A claim for drawback shall be deemed to have been 'filed' when it is delivered to the office of the proper district supervisor, Alcohol Tax Unit, and by that office received."

Plaintiff's theory that its attempt to file its claim at 4:35 p. m., when it found the office of the district supervisor closed, should be construed as a constructive filing on that date perhaps presents a more difficult question, but we have reached the conclusion that it is not tenable. If an attempt to file five minutes late can be construed as timely, we see no reason why an attempt to file five hours late or in fact at any time before midnight should not be similarly construed. There would be no difference in the legal principle presented but obviously such a holding would border on the absurd. This contention overlooks the nature of the privilege conferred upon a claimant as well as the obligation imposed upon the Commissioner.

■ We approve of the statement in United States v. Walker-Hill Co., D.C., 79 F.Supp. 482, 484, as follows: "The right to a drawback from the taxing body is created by statute and is granted only under certain circumstances. * * * Being a governmental grant of a privilege and benefit, it is to be construed in favor of the government and against the party claiming the grant." And it has often been held under analogous circumstances that where a petition has been untimely filed the courts cannot vary or dispense with the statutory requirement as to the time for filing since the statutory period is jurisdictional, and the duty to dismiss on failure to comply is mandatory. Poynor v. Commissioner, 5 Cir., 81 F.2d 521, 522; Edward Barron Estate Co. v. Commissioner, 9 Cir., 93 F.2d 751; Stebbins' Estate v. Helvering, 74 App.D.C. 21, 121 F.2d 892, 893.

■ Thus, a claimant is charged with the responsibility of alleging and proving that his claim has been timely filed and, on failure to do so, the Commissioner is charged with the obligation to deny it. While the point is not made, we are of the view that the government without offering any testimony would have been entitled to a judgment at the conclusion of plaintiff's case. This is so for the reason that plaintiff failed to carry the burden of proof that its claim was timely filed or even that its attempt to file was timely. Plaintiff proved nothing in this respect other than that the claim was presented at 4:35, when the office was found closed. If there was any law, regulation, custom or practice which required the office to be open at that time, the burden was upon the plaintiff to so show.

■■ We need not rest our decision, however, upon this narrow premise. The government did prove that the usual business hours for the office in question, on March 31, 1950 and for six years prior thereto, had been from 8 a. m. to 4:30 p. m. The admission of this testimony was objected to by plaintiff, apparently on the theory that it was not the best evidence. In support of its position on this point, plaintiff relies upon Sec. 29a, Title 5 U.S.C., which it is asserted requires that business hours of a government office must be determined by a regulation promulgated by the heads of the respective departments. No case is cited in support of this contention and in our view the section has no application. We think there was no error in the admission of this testimony even though it perhaps was not necessary, for the reason previously stated. Furthermore, there is a presumption that government officials act in accordance with law and not contrary thereto, and that presumption was strengthened in the instant case from the fact that the practice of closing the office at 4:30 had been followed for six years.

As stated, plaintiff offered no proof that the office was improperly closed at 4:30 p. m. Most of its effort was devoted to an attempt to explain why the claim was not presented for filing at an earlier time. For instance, the secretary whose duty it was to make out the claim was delayed because of illness; plaintiff's president who was required to sign the claim was out of the city and did not re-

turn until the last day for filing, and plaintiff's agent in making the claim to the district supervisor's office was delayed on account of heavy traffic. We suppose this proof was offered as an excuse or reason for the delay in an attempt to bring the facts in this case within the rationale of McCord v. Commissioner, 74 App.D.C. 369, 123 F.2d 164. If so, the attempt failed. In that case, as here, the office closed at 4:30 p. m. The petition sought to be filed was received by Western Union in Washington, D. C., at 4:24 p. m. and would have been delivered to the proper office prior to 4:30 except for the fact that the Board, by its instructions to a government operator that outgoing messages should have priority, had prevented the receipt of the telegraphed petition before closing time. The court stated, 123 F.2d at page 165: "Thus we see that the Board by its own method of doing business prevented direct filing by McCord's agent, Western Union. The method of filing upon which the Board insisted could not be carried out before 4:30. This was due to no fault of McCord's agent. Rather it was due to the fact that the government operator, acting pursuant to instructions, was busy transmitting outgoing messages which were given priority over incoming messages."

Thus, the decision rests solely on the premise that the taxpayer through its agent, Western Union, was ready and attempted to file his claim six minutes before closing time but was prevented from doing so by the instructions which the agency had given to its employee. In contrast, we here have a situation where no obstacle was placed by the government in the way of plaintiff's filing prior to 4:30, and the fact that it made no attempt to do so until after the office closed was attributable solely to reasons of its own creation.

Plaintiff emphasizes a statement in the McCord case, 123 F.2d at page 165, "Likewise, we believe that a full opportunity, an open door, must be maintained for the potential filer until the clock strikes." That statement undoubtedly was made in connection with the fact that the government had placed an obstacle in the path of the potential filer which prevented filing of the petition prior to closing time. In that case, the clock struck at 4:30, and it struck at the same time in the instant case.

We see no occasion to cite or discuss other cases relied upon by plaintiff because the facts in each are more remote than those of the McCord case. It is true, as pointed out by plaintiff, that courts, legislative bodies and administrative agencies are now more liberal than formerly in adopting laws, regulations and rules relative to last minute filings. As an example, the Commissioner of Internal Revenue has promulgated a regulation providing that income tax returns placed in the postoffice and bearing a postmark prior to midnight of March 15, the last day fixed for filing, will be considered as timely filed. In effect, the Commissioner has made the postal service its agent rather than that of the taxpayer. This liberality, however, is of no benefit to plaintiff because none of the rules or regulations which it cites are applicable to the instant situation.

Plaintiff's insistence that the decision below, if undisturbed, works a great hardship, on its face has some appeal. However, Congress has given the taxpayer ninety days in which to file a claim for drawback, and when the matter of filing is delayed until the last minute of the last hour of the last day, and even beyond that, it would appear that any hardship must be attributed to the taxpayer's failure or negligence rather than the statute which Congress has enacted for its benefit. Plaintiff's situation is analogous to that of a person who arrives at a railroad station expecting to catch a train, five minutes after the train has departed. He is no better off than if he had been five hours or five days late. And it is of no consequence that his delay was occasioned by emergency business or that he was held up by a congestion in traffic.

The judgment appealed from is

Affirmed.