**VALLEY BROADCASTING COMPANY,
Inc., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**Nos. 13110, 13111.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 20, 1956.

Decided Oct. 11, 1956.

10. United States ex rel. Chapman v. Federal Power Commission, 345 U.S. at page 171, 73 S.Ct. at page 619.

Mr. Russell Rowell, Washington, D. C., for appellant. Messrs. Frank Roberson and Frank U. Fletcher, Washington, D. C., also entered appearances for appellant.

Mr. John J. O'Malley, Jr., Counsel, Federal Communications Commission, with whom Messrs. Warren E. Baker, General Counsel, Federal Communications Commission, and Richard A. Solomon, Assistant General Counsel, Federal Communications Commission, were on the brief, for appellee.

Before WILBUR K. MILLER, FAHY and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The appeal in case No. 13110 is from an order of the Commission dismissing, as untimely filed, a protest filed by the appellant under § 309(c) of the Communications Act of 1934 [1] protesting the grant, without hearing, of a construction permit to Confederate Radio Company for a new 500 watt daytime broadcast station at West Point, Georgia, the location and area now served by appellant.

The appeal in case No. 13111 is from an order of the Commission dismissing a second protest by the same appellant directed to the Commission's grant to Confederate, without a hearing, of an application for modification of its construction permit. The Commission dismissed the protest on the ground that appellant was not a party in interest because it could not show that it would suffer economic injury as a result of the modification. In the oral argument appellant stated that if the protest involved in case No. 13110 is held to have been filed in proper time, it would not be necessary for the court to decide case No. 13111, and that case could be considered moot.[2]

---

1. 66 Stat. 715, 47 U.S.C.A. § 309(c).

2. This is because any points appellant desired to have considered at a hearing on the second protest would be involved in the hearing on the first protest.

The question in case No. 13110 grows out of the facts surrounding the filing of a protest by the appellant to the Commission's grant of a construction permit to Confederate Radio Company, described earlier. To invoke a hearing under § 309(c) of the Communications Act the protest of a party in interest must be filed within 30 days of the Commission's grant.

It is conceded that the final day for this filing was November 21, 1955. The Commission has by rule fixed business hours, the termination of the business day being at 5 P. M. On Monday, November 21, shortly before 5 P. M., the appellant's counsel appeared in the office of the Commission for the purpose of filing a protest to invoke a public hearing under § 309(c). His protest was not fully assembled and his certificate of service had to be prepared before all of the documents constituting the protest were actually in condition to be presented for a formal filing. This was completed at about 5:20 P. M. or not later than 5:30 and the papers were received by a clerk; thereafter, either that night or the following morning, the papers were stamped as filed November 21, 1955. On November 23, the Commission entered an order and advised appellant that the protest deposited November 21, 1955 was *not* a timely filing under § 309 (c) and that the papers had been re-stamped as having been filed November 22, 1955, which is plainly out of time, so that the protest would not invoke the public hearing contemplated by the statute.

The position of the Commission is that any tender for filing at any moment or point of time after 5 P. M., the regular closing time of the office, does not constitute a filing on that business day even though the document may be physically received and taken by the staff. However, no statute or regulation of the

Commission fixes 5 P. M., or any hour of the day, as the last hour for filing. No other defect in the protest is asserted by the Commission.

The Commission relies on Owens-Illinois Glass Co. v. District of Columbia [3] in which this court permitted a filing where the document was placed under the door *after* the filing office was in fact closed; the court said:

" 'a full opportunity, an open door, must be maintained for the potential filer until the clock strikes.' We agree with the Board [of Tax Appeals] that in the absence of established office hours 'the clock does not strike until midnight of the last day.' " 92 U.S.App.D.C. 15, 18, 204 F.2d 29, 31.

Citing this statement, the Commission argues, "However, where as here, regular office hours have been established the time for filing papers with the Commission expires at the close of business hours on the final due date." However, neither this statement in Owens-Illinois nor the decisions in the other cases cited by appellant [4] are controlling in a situation where the filing party was in the filing office before it actually closed.

In the present case appellant's attorney was in the office of the Commission before the established closing time and was engaged in assembling his papers and documents for an orderly filing when the clock reached the official closing hour; and it is conceded that he deposited the documents within 20 to 30 minutes thereafter. It is not uncommon for Clerks of Courts and other public agencies, and their staffs, to assist citizens and lawyers in assembling papers presented for filing whether presented at the last permissible moment or even earlier.

We hold that the protest deposited on November 21, 1955, under the circumstances shown by the record in

3. 1953, 92 U.S.App.D.C. 15, 204 F.2d 29.

4. Hilker & Bletsch Co. v. United States, 7 Cir., 1954, 210 F.2d 847; Di Prospero v. Commissioner, 9 Cir., 1949, 176 F. 2d 76; Stebbins' Estate v. Helvering, 1941, 74 App.D.C. 21, 121 F.2d 892; Lewis-Hall Iron Works v. Blair, 57 App. D.C. 364, 23 F.2d 972, certiorari denied, 1928, 277 U.S. 592, 48 S.Ct. 529, 72 L.Ed. 1004.

this case, was filed in due time with all the legal consequences which flow from a timely filing in compliance with § 309 (c). The intent and purpose of Congress in allowing an aggrieved party to file a protest and thereby secure an open hearing on the whole subject was to make sure that those who demonstrate they are "parties in interest" will have an opportunity to show the Commission that it is about to make a mistake against the public interest. Thus the hearing serves important public purposes beyond the narrower interests of the protestant.

Zeal for orderly procedures hardly calls for such Cinderella-like treatment of a protest when the filing party is in the filing office before closing time to present the necessary documents. The denial of the right to a public hearing in these circumstances cannot be allowed to stand on such arbitrary grounds.

The order of the Commission in case No. 13110 is reversed and the case remanded to the Commission for further proceedings. The appeal in case No. 13111 is dismissed as moot.