## HEIKKINEN *v.* UNITED STATES.

No. 89.   Argued December 10, 1957.—Decided January 6, 1958.

*David Rein* argued the cause for petitioner.   With him on the brief were *Joseph Forer* and *M. Michael Essin.*

*J. F. Bishop* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Olney* and *Beatrice Rosenberg.*

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

This case involves the legality of convictions of petitioner, an alien previously ordered deported, for (1) willful failure to depart from the United States, and (2) willful failure to make timely application in good faith for travel or other documents necessary to his departure, within six months from the date of the final order of deportation.

Section 20 (c) of the Immigration Act of 1917, 39 Stat. 890, as amended, 57 Stat. 553, 64 Stat. 1012, 8 U. S. C. (1946 ed., Supp. IV) § 156 (c), provided, in pertinent part, that "[a]ny alien against whom an order of deportation is outstanding . . . who shall willfully fail or refuse to depart from the United States within a period of six months from the date of such order of deportation, or from the date of the enactment of the Subversive Activities Control Act of 1950, whichever is the later, or shall willfully fail or refuse to make timely application in good faith for travel or other documents necessary to his departure, . . . shall upon conviction be guilty of a felony, and shall be imprisoned not more than ten years . . . ." It is the above-quoted provisions of § 20 (c) that are involved here.

Petitioner, a native of Finland, went to Canada in 1910 and later acquired Canadian citizenship. He entered the United States in 1916 and, except for several foreign trips, has since resided here. A final order of deportation was entered against him on April 9, 1952, under the Act of October 16, 1918, 40 Stat. 1012, as amended, 41 Stat. 1008, 54 Stat. 673, 64 Stat. 1006, 1008, 8 U. S. C. (1946 ed., Supp. IV) § 137,[1] by reason of his membership in the

---

[1] That Act provided, in pertinent part:

"[Sec. 1] That any alien who is a member of any one of the fol-

Communist Party of the United States from 1923 to 1930.[2]

On November 10, 1953, petitioner was indicted, in two counts, in the United States District Court for the Western District of Wisconsin. The first count charged him with willful failure to depart from the United States within six months from the date of the deportation order. The second count charged him with willful failure to make timely application in good faith for travel or other documents necessary to his departure from the United States within six months from the date of the deportation order. Upon a trial before a jury he was convicted on both counts. He was sentenced to imprisonment for a term of five years on Count 1, and imposition of sentence on Count 2 was suspended until completion of service of the sentence on Count 1. The Court of Appeals affirmed. 240 F. 2d 94. We granted certiorari. 353 U. S. 935.

---

lowing classes shall be excluded from admission into the United States:

.        .        .        .        .

"(2) Aliens who, at any time, shall be or shall have been members of any of the following classes:

.        .        .        .        .

"(C) Aliens who are members of or affiliated with (i) the Communist Party of the United States . . . ." (64 Stat. 1006.)

"Sec. 4. (a) Any alien who was at the time of entering the United States, or has been at any time thereafter, . . . a member of any one of the classes of aliens enumerated in section 1 (2) of this Act, shall upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in the Immigration Act of February 5, 1917. The provisions of this section shall be applicable to the classes of aliens mentioned in this Act, irrespective of the time of their entry into the United States." (64 Stat. 1008.)

[2] He was asked at the deportation hearing to specify the country to which he would prefer to go, if deported from the United States, and he answered: "To my native country, Finland." Deportees are authorized to designate the country of their first choice by § 20 (a) of the Immigration Act of 1917, as amended.

Petitioner challenges the judgments of conviction on a number of grounds, but in the view we take of the case it is necessary to consider only the first ground, namely, that the evidence is insufficient to support the verdict on either count.

This is a criminal case. It is therefore necessary that the prosecution adduce evidence sufficient to support a finding of guilt beyond a reasonable doubt. This is no less true when the defendant is an alien. *Harisiades* v. *Shaughnessy,* 342 U. S. 580, 586. The crucial element of the crime charged in the first count is that petitioner "did *willfully* fail to depart from the United States" within six months from the deportation order of April 9, 1952. (Emphasis supplied.) A thorough review of the record discloses no evidence that any country was willing, in that period, to receive petitioner.[3] There can be no willful failure to depart until "the country willing to receive the alien is identified." *United States* v. *Spector,* 343 U. S. 169, 171. It therefore cannot be said that there was any evidence to support the jury's finding that petitioner "did *willfully* fail to depart from the United States" within six months from the deportation order. The evidence on Count 1 is thus insufficient to support the verdict, and the judgment of conviction thereon must fall.

The Government argues that petitioner willfully failed to make timely application to Finland, or to some other

---

[3] There was evidence that after expiration of the period of six months from the issue of the deportation order on April 9, 1952, petitioner obtained a passport to Canada. But this evidence was irrelevant to the issue whether Canada was willing to receive petitioner during the period covered by the indictment, and, in fact, counsel for the Government objected to this evidence upon the ground that the Canadian passport did not show Canada's willingness to accept petitioner "within the six months' period [after April 9, 1952], which is the . . . period that we are concerned with in this indictment."

country, to receive him, and that if he had done so he might have been able to identify, within the time prescribed, a country to which he could go. While this argument has some relation to Count 1, it mainly involves, and therefore brings us to a consideration of, the adequacy of the evidence to support the verdict on Count 2. On April 18, 1952, nine days after entry of the order of deportation, the officer in charge of the Immigration and Naturalization Service at Duluth, Minnesota, at the request of the District Director of Immigration at Chicago, sent Inspector Maki to interview petitioner and obtain "personal data, usually called passport data." Maki admitted at the trial that, in that interview, he "told [petitioner] that [he] had been instructed to get this personal history; that [he] was going to prepare this on the Passport Data form, and that it would [be sent to Chicago where it] would be considered by [the] Service down there with a view towards [the] Service obtaining some travel document or other in [petitioner's] case," and that this was common procedure in such cases. Petitioner furnished the information requested, and it was forwarded by Maki, on April 21, 1952, to the District Director at Chicago. On April 30, 1952, petitioner received a letter from the officer in charge of the Immigration and Naturalization Office in Duluth, which, after reciting that an order directing petitioner's deportation from the United States had been entered on April 25, 1952,[4] said:

"Arrangements to effect your deportation pursuant to such order are being made and when completed you will be notified when and where to present yourself for deportation."

[4] This was, in fact, not the date of the deportation order, which was April 9, 1952, but, rather, was the date of the warrant of deportation ordering petitioner deported to Finland.

The letter continued, summarizing pertinent provisions of § 20 (c) of the Immigration Act of 1917, as amended,[5] and concluded: "Therefore, you will recognize the importance of making every effort in good faith to obtain passport or other travel documents so that you may effect your departure pursuant to the said order of deportation within the time prescribed by the quotation above from the [Immigration Act of 1917, as amended]."

On February 12, 1953, an investigator of the Service interviewed and took a written and signed statement from petitioner, which was put in evidence by the Government at the trial. In that statement petitioner corroborated Maki's statement to him of April 9, 1952, acknowledged receipt of the letter of April 30, 1952, and stated, in substance, that he had not applied for travel documents because, relying on Maki's statement and the letter mentioned, he had "been waiting for instructions from the immigration authorities" or "from Mr. Maki as to when [he] should start to make application for a passport, in case the Service had failed to get a visa or a passport." Petitioner's statement further recited that he had never received any request from the Service "to execute any passport application" and that he had not willfully refused to depart from the United States nor to apply in

---

[5] That summary read as follows: "In this connection you are reminded that [§ 20 (c) of the Immigration Act of 1917, as amended] . . . declares that any such alien 'who shall willfully fail or refuse to depart from the United States within a period of six months from the date of such order of deportation, . . . or shall willfully fail or refuse to make timely application in good faith for travel or other documents necessary to his departure, or who shall connive or conspire, or take any other action, designed to prevent or hamper or with the purpose of preventing or hampering his departure pursuant to such order of deportation, or who shall willfully fail or refuse to present himself for deportation at the time and place required by the Attorney General pursuant to such order of deportation, shall upon conviction be guilty of a felony. . . .'"

good faith for travel documents, but wanted "to cooperate [with the Attorney General to get] a passport to Finland . . . ."

Is this evidence sufficient to support the jury's finding that petitioner "did *willfully* fail to make timely application in good faith for travel or other documents necessary to his departure from the United States"? We believe that it is not. There can be no *willful* failure by a deportee, in the sense of § 20 (c), to apply to, and identify, a country willing to receive him in the absence of evidence, or an inference permissible under the statute, of a "bad purpose" or "[non-]justifiable excuse," or the like. Cf. *United States* v. *Murdock,* 290 U. S. 389, 394; *Spies* v. *United States,* 317 U. S. 492, 497, 498. Inspector Maki had informed petitioner that his purpose, in procuring the "passport data" on April 9, 1952, was to send it to the District Director at Chicago, where it "would be considered . . . with a view towards . . . obtaining some travel document or other in his case." Moreover, the letter of April 30, 1952, from the officer in charge of the Duluth office, told petitioner, in the plainest language, that the Service was making the arrangements to effect his deportation and, when completed, he would be notified when and where to present himself for deportation. Surely petitioner was justified in relying upon the plain meaning of those simple words, and it cannot be said that he acted "willfully"—*i. e.,* with a "bad purpose" or without "justifiable excuse"—in doing so, until, at least, they were in some way countermanded, which was never done within the prescribed period. It is true that the last paragraph of that letter drew attention to the importance of making good-faith efforts to obtain the documents necessary to effect departure within the time prescribed, but that language did not in terms negate, and cannot fairly be said implicitly to have negated, the earlier paragraph of the letter, because, as stated, that paragraph of

the letter plainly told petitioner that the Service was itself making the necessary arrangements for his deportation and, when completed, he would be notified when and where to present himself for deportation.   In this factual setting we believe there was not sufficient evidence to support the jury's finding that petitioner acted *willfully* in failing to apply for documents necessary to his departure within the time prescribed.   The evidence on Count 2 is thus insufficient to support the verdict, and the judgment of conviction on that count must also fall.

*Reversed.*