Fred A. SEATON, individually and as Secretary of the Interior, Appellant,

v.

The TEXAS COMPANY, Appellee.

John SNYDER, Appellant,

v.

The TEXAS COMPANY, Appellee.

Nos. 13636, 13637.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 14, 1958.

Decided May 8, 1958.

Mr. Roger P. Marquis, Atty., Dept. of Justice, with whom Mr. S. Billingsley Hill, Atty., Dept. of Justice, was on the brief, for appellant in No. 13636.

Mr. James R. Browning, Washington, D. C., for appellant in No. 13637.

Mr. John J. Wilson, Washington, D. C., with whom Messrs. Roger J. Whiteford and Philip S. Peyser, Washington, D. C., were on the brief, for appellee.

Messrs. Samuel Nakasian, Washington, D. C., and Robert H. Rines, Boston, Mass., filed a brief on behalf of Patrick A. McKenna, as amicus curiae.

Before BAZELON, FAHY and BURGER, Circuit Judges.

FAHY, Circuit Judge.

The Secretary of the Interior and John Snyder separately appeal from a judgment of the District Court that appellee The Texas Company, assignee

of Thomas G. Dorough, is the holder of a valid oil and gas lease on forty acres of land in North Dakota and that Snyder should surrender for cancellation a lease to him of the same acreage.[1] The Secretary had cancelled the Dorough lease, which he had first issued, leaving in effect a later lease to Snyder.

Dorough applied April 19, 1948, for a noncompetitive lease on some 2000 acres, including the forty in question. His application, pursuant to the Mineral Leasing Act of 1920, 41 Stat. 437, as amended, 30 U.S.C.A. § 181 et seq. was filed at the Bismarck, North Dakota, district land office of the Bureau of Land Management, Department of the Interior. Having received no word, he inquired of the Department on January 19, 1949, at its regional land office at Billings, Montana, writing *inter alia,*

"if any part of this application is considered acquired land, please accept this letter as formal notice that it is my desire that the matter be forwarded to your proper land office in order that an oil and gas lease can be issued."

The Act of 1920 authorizes the leasing of land known as "public domain land," though not so described in the Act. The terms are used to distinguish land leaseable under that Act from that leaseable under the Acquired Lands Act of 1947, 61 Stat. 913, 30 U.S.C.A. § 351 et seq.

By letter of January 25, 1949, the regional office at Billings advised Mr. Dorough:

"The only public domain land included in your application is described as:
"T. 153 N.R. 95 W.
sec. 5, SW¼SW¼, SW¼SE¼.
sec. 8, NW¼NE¼, NW¼NW¼, SE¼SW¼.

"In view of the fact that the above land is the only land that may be included in a lease under the leasing act of February 25, 1920, it is suggested that you file a new application covering the balance of the land. Such application should be filed direct in the Bureau of Land Management office in Washington, D. C. Your application should clearly show that it is an application for acquired land."

Dorough did not file a new application covering the balance of the land. He wrote the regional office to forward his application on to Washington, "with a request that it be treated as an application for an oil and gas lease on acquired lands, thus retaining its filing time and date priority." He enclosed a separate application for the acreage he had been advised was public domain.

On December 1, 1951, the United States, through the Bureau, issued a lease to Dorough covering the forty acres, denominated a "Lease of Oil and Gas Lands Under the Act of August 7, 1947."

Subsequent to the application of Dorough, but before his lease was issued, Snyder filed with the Bureau in Washington an application covering the same forty acres as well as other land, all as public domain and "pursuant and subject to" the Act of 1920. His application was transmitted to Billings. There it was first rejected as to the forty acres, but this action was revoked upon a showing that these acres were in fact public domain for oil and gas lease purposes.[2] On April 24, 1953, an earlier lease which had been issued to Snyder under the 1920 Act for other acreage was amended to include the forty acres.

On February 16, 1954, the Chief, Division of Minerals of the Bureau, at the re-

---

**1.** The forty acres are described as follows: NE1/4SW1/4 of Section 7 in Township 153 N., Range 95 W., 5th Principal Meridian, McKenzie County, North Dakota.

**2.** The Bureau found that when the United States had issued a land patent on the forty acres in 1940 it had reserved the oil and gas rights. The land had been reconveyed to the United States two years later, but the oil and gas had remained at all times part of the public domain and thus were not "acquired."

quest of Snyder, and without notice to Dorough, cancelled the December 1, 1951, lease to Dorough insofar as it included the forty acres on the ground that as to that acreage it had been erroneously issued under the Act of 1947. On appeal to the Secretary of the Interior by The Texas Company and Dorough the Bureau decision was affirmed.[3] The Texas Company thereupon filed its complaint in the District Court with the result which we have stated.

On October 3, 1957, we rendered an opinion that the judgment of the District Court should be affirmed as to the restoration of the lease to Dorough, held now by The Texas Company, on the ground that it could not be cancelled without judicial proceedings instituted for that purpose. We relied principally upon decisions of the Supreme Court that a patent to land once issued by the United States could be cancelled only by the "judgment of a court," citing Noble v. Union River Logging R. Co., 147 U.S. 165, 176, 13 S.Ct. 271, 275, 37 L.Ed. 123; Johnson v. Towsley, 13 Wall. 72, 84–87, 80 U.S. 72, 84–87, 20 L.Ed. 485; United States v. Stone, 2 Wall. 525, 535, 69 U.S. 525, 535, 17 L.Ed. 765; and other cases. The Secretary's petition for rehearing *en banc* was denied, but the court which originally decided the case granted a rehearing and the case has been reargued before us.

If the cancellation of the Dorough lease was not permissible under the principles laid down in the land patent cases it should be set aside. If cancellation was not permissible as valid administrative action of the Secretary it should be set aside for that reason. We think it was not valid administrative action. This makes it unnecessary to cope with the applicability of the land patent cases,

and we accordingly withdraw our opinion of October 3, 1957.

The District Court, Judge Wilkin sitting, after a hearing, filed a Memorandum containing findings of fact and conclusions of law.[4] The Memorandum states,

"The evidence is clear and convincing to this Court that the plaintiff's [Dorough's] 1948 application was the first application for the 40-acre tract. That fact is patent and cannot be controverted by legal technicalities regarding the propriety of the application."

In the District Court counsel for the Secretary conceded that this prior application of Dorough was a good application for the forty acres as public domain, which the oil and gas turned out to be. As Judge Wilkin explains, and see note 2, supra,

"the surface of the 40 acres had been changed from 'public' to 'acquired' land, [for which reason] the applicant [Dorough] and the officer of the Land Office construed the application as a request for a lease of acquired lands, and referred the application for the 40 acres * * * to the Washington Office."

The construction referred to was that of the Land Office. As we have seen from his letter of January 19, 1949, Dorough left to the Department the decision as to which land described in the application was public domain and which was acquired.[5]

When the Bismarck District Land Office made the decision Dorough did not lose his priority by asking that the application be sent to Washington where applications for acquired land were processed. See Moser v. United States, 341 U.S. 41, 46, 71 S.Ct. 553, 95 L.Ed. 729.[6]

---

3. Dorough also petitioned for reinstatement of his lease, which was denied.

4. The Final Order and Judgment recited that the Memorandum embodied in more detail the findings of fact and conclusions of law.

5. And see Dorough's letter of February 3, 1949, to the Bureau at Billings.

6. The Supreme Court mentioned that Moser "had sought information and guidance from the highest authority to which he could turn." 341 U.S. at page

Cf. Heikkinen v. United States, 355 U.S. 273, 78 S.Ct. 299, 2 L.Ed.2d 264. We agree with Judge Wilkin that,

> "When the mistake was discovered, and the oil and gas under the 40 acres was recognized as public domain, the application to [*sic*] that acreage should in justice have been referred back to the District Land Office to be treated as an application for public land &ast; &ast; &ast;."

Dorough always remained the first applicant and he possessed the statutory qualifications. Moreover, his application always was for a lease covering the oil and gas embraced within the forty acres. He never abandoned or withdrew his application for just such a lease. As Judge Wilkin said,

> "The contention of the defendants that the reference of the original application to Washington was an abandonment or cancellation of Dorough's application for public lands is a misconstruction of the facts."

The Secretary urges, however, that the questions were for him to decide and that the courts, though they might disagree with him, are bound by his decision and cannot disturb his cancellation of the Dorough lease. The contention invites analysis.

 There is a wide latitude available to the Secretary in many situations,[7] but he is bound by the statute. Lane v. Hoglund, 244 U.S. 174, 37 S.Ct. 558, 61 L.Ed. 1066; Lee v. Johnson, 116 U.S. 48, 49, 6 S.Ct. 249, 29 L.Ed. 570 (but see as to questions of fact); Moore v. Robbins, 96 U.S. 530, 535, 24 L.Ed. 848;

Barash v. Seaton, 103 U.S.App.D.C. ——, 256 F.2d 714; McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 226 F.2d 35; Clackamas County, Or. v. McKay, 94 U.S.App. D.C. 108, 219 F.2d 479; Chapman v. Santa Fe Pac. R. Co., 90 U.S.App.D.C. 34, 38, 198 F.2d 498, 502; Witbeck v. Hardeman, 5 Cir., 51 F.2d 450; 286 U.S. 444, 52 S.Ct. 604, 76 L.Ed. 1217. And see Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503. Moreover, the Secretary's latitude is not the same in all circumstances. When the controversy is fundamentally between two private interests, as here and as was so in Moore v. Robbins, supra, see 96 U.S. at page 535, 24 L.Ed. 848, and in Chapman v. Santa Fe Pac. R. Co., supra, his discretion is not as great as when the controversy is between private interests on one hand and the Secretary "as guardian of the people," on the other, as in United States ex rel. Barton v. Wilbur, 283 U. S. 414, 419, 420, 51 S.Ct. 502, 504, 75 L.Ed. 1148. The law is not blind to such distinctions.

There is a difference also in the latitude the Secretary possesses depending upon whether the question is factual or legal. It can be said that Hoglund, and certainly Harmon, involved legal questions, though this is not so clear in the former. In any event a factual decision such as was held unreviewable in Lee v. Johnson, 116 U.S. at page 52, 6 S.Ct. at page 250, 29 L.Ed. 570, turning upon whether on the evidence a homestead claimant was seeking in good faith a tract for himself or, on the contrary, for his son-in-law, is a different matter from deciding whether Dorough was the first qualified applicant.

---

46, 71 S.Ct. at page 556. We do not think that this indicates a necessity for Dorough to have sought the advice of the Secretary or even of the Director of the Bureau in Washington. Rather we think the question is whether the source of the information was such that Dorough was justified in acting as he did.

7. United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 23 S.Ct. 698, 47 L.Ed. 1074; Knight v. United Land Ass'n, 142 U.S. 161, 12 S.Ct. 258, 35 L.Ed. 974; cf. Ickes v. Underwood, 78 U.S.App.D.C. 396, 141 F.2d 546; Wann v. Ickes, 67 App.D.C. 291, 92 F.2d 215. See Williams v. United States, 138 U.S. 514, 11 S.Ct. 457, 34 L.Ed. 1026. See, also, Decatur v. Paulding, 14 Pet. 497, 39 U.S. 497, 10 L.Ed. 559.

Some opinions state that the courts have authority to intervene when the duty of the executive officer is ministerial, in which event mandamus will lie. United States ex rel. Barton v. Wilbur, supra; Decatur v. Paulding, supra; Kendall v. United States, 12 Pet. 524, 37 U.S. 524, 9 L.Ed. 1181; Marbury v. Madison, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60. But the word "ministerial" is not sufficiently expressive to denote adequately every situation into which the courts may enter.[8] Indeed, a duty often becomes ministerial only after a court has reached its own judgment about a disputable legal question and its application to a factual situation. Lane v. Hoglund, supra.[9] And see Professor Jaffe's discussion in The Right to Judicial Review I, 71 Harv.L.R. 401 (Jan.1958).

■ In the present case a statement of the applicable rule simply in terms of ministerial duty we think is not required. We are not asked to direct the disposal of an interest in the public lands against the will of the Secretary. He has twice leased the interest involved. The contest is primarily between the two lessees. See Witbeck v. Hardeman, 5 Cir., 51 F. 2d 450; 286 U.S. 444, 52 S.Ct. 604, 76

L.Ed. 1217. In this situation we think the court may decide whether the choice made by the Secretary between the private parties is plainly wrong in the eyes of the law.

"Determinations by an administrative agency should not be reversed by means of injunction or mandamus merely because the court may have reached another conclusion. They can only be overturned when the administrative action is unreasonable or plainly wrong."

Chapman v. Santa Fe Pac. R. Co., 90 U.S. App.D.C. at page 38, 198 F.2d at page 502. Compare McKenna v. Seaton, 103 U.S.App.D.C. ——, —— F.2d ——. And see again Lane v. Hoglund, and Harmon v. Brucker, both supra. The Administrative Procedure Act, though not necessary to our decision, is consistent therewith. 60 Stat. 243 (1946), 5 U.S.C.A. § 1009.

Unless judicial relief as between private interests is available when the judicial conscience concludes that to let the administrator's solution stand would leave uncorrected plain legal error, his authority would be so absolute as to be

8. See Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 249–250, 96 F.2d 518, 521–522, where the court stated, citing many cases:

"The following tests have been used to uphold the exercise of judicial restraint upon executive action under valid laws: (1) Where an officer, insisting that he has the warrant of the statute, is transcending its bounds, and thus unlawfully assuming to exercise the power of government * * * (2) where an officer attempts to enlarge his power, or to usurp power * * * (3) where his act is based upon a clear mistake of law * * * (4) where the action of the officer or administrative body is clearly beyond its power and in violation of the statute * * * (5) where an officer has acted, or threatens to act, in a capricious and arbitrary manner * * * (6) where the act of the officer, 'under any view that could be taken of the facts that were laid before him, was ultra vires, and beyond the scope of his authority. * * * *' "

9. The opinion was by Mr. Justice Van Devanter, who had been Solicitor of the Department of the Interior. It reads in part, 244 U.S. at page 181, 37 S.Ct. at page 560:

"True, this court always is reluctant to award or sustain a writ of mandamus against an executive officer, and yet cases sometimes arise when it is constrained by settled principles of law and the exigency of the particular situation to do so. Kendall v. United States, 12 Pet. 524, 9 L.Ed. 1181; United States v. Schurz, 102 U.S. 378, 26 L.Ed. 167; Roberts v. United States, 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443; Garfield v. United States ex rel. Goldsby, 211 U.S. 249, 29 S.Ct. 62, 53 L.Ed. 168; Ballinger v. United States ex rel. Frost, 216 U.S. 240, 30 S.Ct. 338, 54 L.Ed. 464. And see Noble v. Union River Logging Railroad Co., 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90."

inconsistent with basic conceptions of a government under law, with advantage to neither administrator, public, nor private parties. On the other hand, unless of course the courts restrain their own exercise of authority within the limits we have indicated the prudent division of responsibility is destroyed and the deference due to administrative judgment is withheld.

Dorough was first by more than two years, he was qualified, and it is conceded, as we have said, that he first applied properly. There was no abandonment of his first application for an appropriate lease. And a lease was issued to him as the first qualified applicant. This lease remained unchallenged for nearly three years. So much is clear. Accordingly it was a mistake to lease to another the acreage already covered by the lease to Dorough. Yet, instead of cancelling the lease improvidently issued to Snyder, the error in issuing it was compounded by cancelling Dorough's lease, without notice to him.[10] The statutory scheme for leasing to the first qualified applicant we think cannot be abandoned by according to the Secretary an excessive latitude thus to decide who is qualified by blurring or ignoring who is first and also qualified.[11]

We conclude that it was plainly and convincingly wrong for the Secretary to cancel out entirely a lease to Dorough so as to leave in effect the lease to Snyder as if he were the first qualified applicant. Since the lease to Dorough, however, was issued under the 1947 rather than the 1920 Act, the court's judgment should require the lease to be held and administered as though issued under the 1920 Act and that matters be so adjusted as to accord with that Act, with such record changes or notations as may be advisable. As to the Snyder lease, the judgment of the District Court in its present form seems adequate.

If the parties desire to present a judgment in terms which they deem more appropriate than is here indicated to carry out the result we reach they may do so in the District Court.

The judgment is affirmed on the merits but is vacated as a procedural matter in order that a new judgment may be entered as may be deemed appropriate, and as is consistent with this opinion.

It is so ordered.

BURGER, Circuit Judge (dissenting).

This is a close and difficult case, but I would sustain the Secretary's action. As I read the majority opinion, it holds, not that the Secretary is without power to correct his own inadvertent administrative errors, but that in doing so in this particular case he did so arbitrarily.

The Secretary's action had some rational basis even though it was one which we, as judges, might not have taken in the first instance, had we been in his place. But it does not seem to me our function to repudiate administrative acts because we might take a different view of the equities or because the administrator reached a "wrong" conclusion. The stat-

---

10. The cancellation, however, was not to be effective for thirty days, during which time Dorough could appeal.

11. The case might be different if Dorough's application had been rejected. He could have appealed. But he was given a lease. Though the 1947 Act under which it was issued has a number of provisions different from the 1920 Act under which it should have been issued, none seems material to a decision of this case. The fact that the rentals go into different funds can hardly affect the question whether Snyder or Dorough's as-

signee is entitled to retain a lease. This difference in no way affects priority or qualification of applicants, or raises any policy question involving the applicants. The form of judgment we suggest would remedy the rental matter for the future; and any difficulty over adjustment of past rentals should not affect the question of who is entitled to a lease. Dorough, as we have seen, possessed all qualifications for a lease under the 1920 Act, first properly applied therefor, and was granted a lease, though under the wrong statute as it developed.

utes directed certain channels which applicants must follow to secure a valid lease. The applicant first in point of time here started through the correct channel but, on the erroneous advice of the Department, changed to the wrong channel. The applicant second in point of time complied with the statute precisely and used the proper channel. The Secretary held "Since Dorough had sought as acquired land land available for leasing only as public domain, his application was not a proper one and failed to earn him a preference right to a public land oil and gas lease [citing prior Department decisions]. * * * Snyder's offer was filed under the proper statute and regulation and, *as the first qualified applicant to file a proper application,* he had earned a statutory preference * * * for the land in question." (Emphasis added.) In other words, the Secretary held the lease must go to the applicant coming through the *correct* channel *first.* The Secretary's holding

that the first applicant could not amend his application over two years after its filing to cure a defect in his compliance with the statute does not seem to me arbitrary or "plainly and convincingly wrong." It is simply saying that Dorough lost his priority by failure to comply with the statute until *after* Snyder had filed a correct application. The majority holds that the Secretary is *compelled* to ignore the statutes prescribing the channels to be used. In this day of increasingly complex government, those charged with its administration must be given the power to enforce compliance with the Congressional acts which fix orderly, even though rigid, procedures.[1]

Recently in McKenna v. Seaton, 103 U.S.App.D.C. ——, —— F.2d ——, this court acknowledged the broad powers of administrative officers and sustained an action comparable, in some respects in its legal impact, to the action taken here to cancel the erroneously issued lease.

1. This case is distinguishable from the kind of arbitrariness we disapproved in Valley Broadcasting Co. v. Federal Communications Commission, 1956, 99 U.S.App.D.C. 156, 237 F.2d 784.