UNITED STATES of America, Appellee,

v.

Valdemar Da Silva PEREIRA, Appellant.

No. 632, Docket 77–1440.

United States Court of Appeals,
Second Circuit.

Argued Jan. 27, 1978.

Decided March 16, 1978.

Hugh W. Cuthbertson, Asst. U. S. Atty., D. Conn., New Haven, Conn. (Richard Blumenthal, U. S. Atty., D. Conn., New Haven, Conn.), for appellee.

Peter Goldberger, Asst. Federal Public Defender, New Haven, Conn., for appellant.

Before LUMBARD, MULLIGAN, Circuit Judges, and BRYAN, District Judge.*

MULLIGAN, Circuit Judge:

Valdemar Da Silva Pereira was first admitted to the United States from Portugal with an immigrant visa for permanent residence on January 16, 1960 at New York City.  On March 26, 1965 he pleaded guilty

* Frederick VanPelt Bryan, United States District Judge for the Southern District of New York, sitting by designation.

to three counts of burglary, two counts of theft and one count of escape from custody in the Superior Court of Connecticut, where he had been represented by counsel throughout the proceedings. Pereira was sentenced to a term of not less than two and not more than seven years of imprisonment. Before this term was completed Pereira was ordered deported by the Immigration and Naturalization Service (INS) on December 6, 1965 pursuant to 8 U.S.C. § 1251(a)(4), which provides for the deportation of aliens convicted of crimes involving moral turpitude. The order was executed on September 2, 1966 and Pereira was returned to Portugal. Pereira did not long tarry in the land of his birth. On March 2, 1968 he illegally reentered the United States as a stowaway. After deportation hearings held on January 26 and February 10, 1970 Pereira was again ordered deported under the authority of the original deportation order. 8 U.S.C. § 1252(f). This order was not executed since Pereira was prosecuted criminally in the United States District Court of Connecticut under 8 U.S.C. § 1326[1] for his illegal reentry. He was convicted on June 27, 1970 and was sentenced by Judge Zampano to the custody of the Attorney General for a two year period. Pereira was later paroled and was again deported on June 28, 1971.

Once again Pereira became a stowaway in December, 1971 but was apprehended when he attempted entry at Baltimore, Maryland. He was prosecuted in Maryland as a stowaway under 18 U.S.C. § 2199, pleaded guilty on February 23, 1972, and was remanded for deportation. Before that occurred he was recommitted to the Federal Correctional Institution in Danbury, Connecticut for a parole violation arising from his previous conviction in the District of Connecticut. He was once again deported on November 2, 1972.

Pereira, however, was undeterred by his previous experiences. He illegally entered the United States as a stowaway at Boston, Massachusetts in May, 1973 and was deported for the fourth time on April 25, 1975. This, like his second deportation, was based upon the continuing authority of the original order of deportation. His next illegal entry was on December 22, 1975—again as a stowaway. He was not apprehended until May 16, 1977 and was then ordered deported for the fifth time on May 26, 1977. This order was stayed, however, after the grand jury sitting in Hartford, Connecticut indicted him for unlawful entry under 8 U.S.C. § 1326. On September 20, 1977 Pereira entered a plea of guilty, reserving with the Government's consent his right to appeal the court's denial of his motion to dismiss the indictment. Pereira was sentenced on October 20, 1977 by Judge T. F. Gilroy Daly, United States District Court, District of Connecticut, to the custody of the Attorney General for a period of one year. The execution of this order was stayed pending this appeal.

On his motion to dismiss the indictment in the district court Pereira claimed for the first time that his 1965 conviction in the state court of Connecticut was invalidly obtained. Relying on *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), Pereira asserts that his guilty plea was involuntary because he cannot recall being advised by his counsel that by pleading guilty he had waived his rights to a jury trial, to confront his accusers, and to remain silent, or that a guilty plea could result in deportation. Moreover, he contends that the only surviving transcript of the taking

1. 8 U.S.C. § 1326 provides:
     Any alien who—
         (1) has been arrested and deported or excluded and deported, and thereafter
         (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
     shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

of the guilty plea indicates that at that proceeding the judge made no inquiry into the voluntariness of Pereira's plea. Consequently, claims Pereira, deportation based upon such a conviction could not be used as a predicate for a criminal prosecution under 8 U.S.C. § 1326. See *United States v. Megura,* 394 F.Supp. 246 (D.Conn.1975). Assuming *arguendo* that the state plea was involuntary, the Government contended successfully below that an alien during a criminal prosecution under 8 U.S.C. § 1326 for unlawful reentry after deportation may not collaterally attack his prior deportation order.

This circuit has not yet ruled on this issue.[2] Supporting the Government's position is *United States v. Gonzalez-Parra,* 438 F.2d 694 (5th Cir.), *cert. denied,* 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed.2d 433 (1971); *Arriaga-Ramirez v. United States,* 325 F.2d 857 (10th Cir. 1963); and *United States v. Bruno,* 328 F.Supp. 815 (W.D.Mo.1971). The appellant relies upon *United States v. Gasca-Kraft,* 522 F.2d 149 (9th Cir. 1975); *United States v. Bowles,* 331 F.2d 742, opinion denying rehearing, 334 F.2d 325 (per curiam) (3d Cir. 1964); and see *United States v. Heikkinen,*[3] 221 F.2d 890 (7th Cir. 1955), opinion after retrial, 240 F.2d 94 (7th Cir. 1957), rev'd on other grounds, 355 U.S. 273, 78 S.Ct. 299, 2 L.Ed.2d 264 (1958) which have permitted some collateral review of the prior deportation order. The split of authority was noted by District Judge Charles M. Metzner in *United States v. Mohammed,* 372 F.Supp. 1048 (S.D.N.Y. 1973), the only previous case on point in this circuit, where he held that collateral attack of the deportation order was foreclosed.[4]

The facts in this case compel the affirmance of the order of the district court. Twelve years have elapsed since Pereira pleaded guilty to state criminal charges. He made no direct or collateral challenge in the Connecticut state courts to the voluntariness of his plea or the validity of the resultant conviction.[5] Indeed, his challenge in the instant case is insufficient to permit him to prevail on the constitutional issue; Pereira alleges only that he cannot recall having been aware of his rights at the time of his guilty plea, not that he was never advised of his rights. He has not

2. This court held in *United States ex rel. Bartsch v. Watkins,* 175 F.2d 245, 247 (2d Cir. 1949), that an alien may not collaterally attack a prior deportation order to defend against deportation for illegal reentry. The Supreme Court has left open the question of whether the validity of the prior deportation order could be challenged in a criminal prosecution based on that order. *United States v. Spector,* 343 U.S. 169, 172, 72 S.Ct. 591, 96 L.Ed. 863 (1952).

3. *Heikkinen* involved a criminal prosecution under the statutory precursor of 8 U.S.C. § 1252(e) for an alien's failure to depart the United States as ordered, rather than for illicit reentry subsequent to his deportation as in the instant case. Since *Heikkinen,* Congress has provided for limited collateral review in § 1252(e) cases. See note 4 *infra.*

4. It is arguable that Congress intended to prevent collateral attacks on deportation orders in criminal prosecutions under § 1326. A comprehensive scheme for judicial review of deportation orders is set forth in the Immigration and Nationality Act at 8 U.S.C. § 1105a. It provides, *inter alia,* for direct review of rulings of the Board of Immigration Appeals in the federal courts of appeals, 8 U.S.C. § 1105a(a), and for habeas corpus review if the alien remains in custody pursuant to the order. 8 U.S.C. § 1105a(a)(9). The scheme further provides that defendants in certain criminal prosecutions based upon deportation orders, 8 U.S.C. §§ 1252(d), (e), may obtain judicial review of such orders. 8 U.S.C. § 1105a(a)(6). But this section does not provide for review in § 1326 cases. Indeed, the statute clearly states that no court may review a deportation order if the alien has already departed from the United States following issuance of that order. 8 U.S.C. § 1105a(c). Finally, § 1105a(a) expressly provides that the procedures there defined shall be the "sole and exclusive" method of obtaining judicial review of a final deportation order. Thus, the statutory scheme may not envision judicial review of deportation orders in cases like that at bar. See *United States v. Gonzalez-Parra, supra,* at 697.

5. Pereira's conviction preceded the Supreme Court ruling in *Boykin* by nearly four years. Had he attempted to rely on that decision in making a post-*Boykin* challenge to the 1965 conviction his attack on that ground would not have succeeded since we have held that *Boykin* is not retroactive. *United States ex rel. Rogers v. Adams,* 435 F.2d 1372 (2d Cir. 1970), cert. denied, 404 U.S. 834, 92 S.Ct. 115, 30 L.Ed.2d 64 (1971).

raised the issue in any of his subsequent deportation proceedings nor in the prior § 1326 criminal proceedings in the District of Connecticut. The Government might still have been able in 1970 to prove the constitutional adequacy of Pereira's 1965 guilty plea; in 1978, this task is obviously more difficult. The point is particularly significant here since had the issue been raised the Government also would have been alerted to utilize available alternative grounds for Pereira's deportation. Had any suggestion or claim been made in the intervening years that these convictions were suspect, the INS unquestionably could have obtained Pereira's deportation as an alien who had been arrested and previously deported. 8 U.S.C. §§ 1182(a)(17), 1251(a)(1). Moreover, these independent grounds for deportation also could have served as a predicate for the criminal prosecution under 8 U.S.C. § 1326.[6]

The uncontested facts before us establish that Pereira has displayed a continuing and flagrant disregard of the Immigration Laws of the United States. He has persisted in reentering the United States as a stowaway despite repeated deportations and criminal sanctions. Under these circumstances, we do not hesitate to affirm Pereira's conviction, without deciding whether, under *other* circumstances, a collateral attack on a deportation order might be permissible in a § 1326 proceeding.[7]

The order is hereby affirmed.

---

**6.** We find appellant's challenge in a § 1326 prosecution to the validity of the conviction underlying the deportation order to be analogous to an attempt by an escaped prisoner to contest in a prosecution for escape, 18 U.S.C. § 751, the conviction pursuant to which he was held in custody. The cases in which the latter issue has arisen have uniformly held that the validity of the underlying conviction is of no legal consequence in a prosecution under § 751 because that statute proscribes escape for *all* who are confined at the direction of the Attorney General without mention of the propriety of the confinement. See *United States v. Cluck*, 542 F.2d 728, 732 (8th Cir.), cert. denied, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 597 (1976); *United States v. Smith*, 534 F.2d 74 (5th Cir. 1976), cert. denied, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977); *United States v. Allen*, 432 F.2d 939 (10th Cir. 1970); *United States v. Haley*, 417 F.2d 625 (4th Cir. 1969); *Lucas v. United States*, 325 F.2d 867 n. 2 (9th Cir. 1963) and cases cited therein; *United States v. Jerome*, 130 F.2d 514, 519 (2d Cir. 1942), rev'd on other grounds, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640 (1943).

We agree with the court in *United States v. Bruno, supra,* at 825, which, after reviewing this line of cases, concluded:

Similarly, Section 1326 of Title 8, United States Code, proscribes a deported alien's later being found in the United States, without any mention of the propriety of the deportation, unless it is with the consent of the Attorney General. The alleged invalidity of the underlying conviction thus cannot provide a defense to the violation of Section 1326, *supra,* which is charged in the case at bar.

**7.** We are also unpersuaded by Pereira's contention that judicial review of the conviction underlying his original deportation order is required as a matter of due process, especially in view of his failure to allege with sufficient specificity facts which would tend to support his claims. Cf. *Yakus v. United States,* 321 U.S. 414, 443–47, 64 S.Ct. 660, 88 L.Ed. 834 (1944).