## STATE OF OKLAHOMA *v.* STATE OF TEXAS, UNITED STATES, INTERVENER.

### IN EQUITY.

No. 27, Original.—Orders entered June 7, 1920.

*Order Instructing Receiver.*

UPON consideration of the First Report of Frederick A. Delano, Receiver, in the above-entitled cause and of the supplemental report of June 3, 1920, and the various suggestions of the United States, intervener, and of the State of Texas, and of the several motions, applications, exceptions, and suggestions heretofore filed by parties claiming an interest in the subject-matter of this suit, it is this seventh day of June, A. D. 1920, adjudged and ordered that the action of said Receiver in taking possession of and operating under his own management and control the property described in the order of this court of April 1, 1920 [252 U. S. 372], until the further order of this court, including the oil and gas wells and plants, toll bridges, water plants, tank wagons, pipe lines, storage tanks, and other property located thereon and therein; the arrangements made by said Receiver for guarding and policing said property; the office and field organization created by

him for the operation and development of the property
and the resources thereof, and for collecting, conserving,
and investing the proceeds of the sale of all oil, gas,
gasoline, and other products taken therefrom since April 1,
1920, be, and they are hereby, ratified and approved.

2. So much of the land described in the order of this
court of April 1, 1920, in Range 14 west, as lies between
the south edge of the present sand-bed of the Red River
(marked generally by the border line of vegetation along
the edge of the flood plain) and the foot of the Texas bluff,
as was on the 1st day of April, 1920, in the possession of
persons claiming under patents from the State of Texas,
and is not included in the river-bed lands, as hereinafter
defined, shall be returned by the Receiver to the several
operators or claimants in possession on April 1, 1920, or
their assigns, together with all wells, tanks, pipe lines,
structures, equipment, and material, upon condition that
such operator, claimant, or assigns account for, pay over
to, and impound with the Receiver, if not already done,
three-sixteenths of the gross proceeds of all oil taken from
the respective lands on and since April 1, 1920, and the
royalty on commercial gas customary in the Burk-Burnett
and Northwest Extension oil fields, and royalty on casing-
head gas in accordance with the regulations and schedule
of prices promulgated for Indian lands by the Secretary of
the Interior August 10, 1917, the proceeds thereof to be
either paid in cash, or the payment thereof within ninety
days to be secured by good and sufficient surety to be
approved by the Receiver, and upon the further condition
that said operator or claimant shall enter into an agree-
ment in writing with the Receiver, by the terms of which
the operator shall develop and operate said properties in a
workmanlike and businesslike manner, subject to the
supervision of the Receiver and to the orders of this court,
and shall impound with the Receiver three-sixteenths of
the gross amount of the proceeds from the sale of oil.

thereafter produced, and the royalty on gas and casing-head gas as hereinbefore specified. This agreement to contain such further stipulations as the Receiver may deem proper for regulating the production of gas and oil and to prevent waste or the entrance of water to the oil sands or oil-bearing strata to the destruction or injury of the oil deposits or the damage of wells in the possession of the Receiver; and, provided further, that the Receiver, in his discretion, may agree with any operator or claimant to operate for his benefit and at his expense the lands in said "Big Bend" area. Until the several operators or claimants comply with the foregoing conditions, the Receiver shall retain possession of the respective properties and shall operate the same in accordance with the order of this court of April 1, 1920, as modified by this order.

In the event of failure or refusal of any operator to operate the property as directed by the Receiver, or if any operator shall violate his agreement with the Receiver, the Receiver is authorized to take possession of and operate such property, impound three-sixteenths of the proceeds as provided by this order, and pay out of said proceeds the expenses of operation, keeping a separate account of the expense of production of each well as nearly as practicable.

3. The river-bed lands, for the purposes of this order, shall comprise all lands not hereinbefore excepted, being more specifically that part covered by the receivership of all the broad and approximately flat sandy stretch which extends from the foot of the bluff or the edge of the flood plain, as the case may be, on the south side of the river, to the midchannel of the river as defined in said order of April 1, 1920, and as it then existed including everything within the bounds just described.

4. It is further ordered that said Receiver be and he is hereby authorized and directed, out of the gross proceeds derived from the production of any well in the river-bed

area paid to him since April 1, 1920, (1) to pay to the operator or operators of any such well the actual cost of operating the same since April 1, 1920, inclusive, including in such cost a reasonable allowance for field supervision, but excluding any allowance for general or office supervision; (2) to refund to those operators or drillers who have drilled and brought into production new wells in said area since April 1, 1920, a fair percentage of the entire actual cost of such work, including a reasonable allowance for field supervision, but excluding any allowance for general or office supervision; (3) to pay the just claims of mechanics and materialmen for work done and materials furnished on wells in said area brought in since April 1, 1920, and the claims of persons, associations, and corporations for advancements made in good faith for drilling operations upon such wells, provided satisfactory evidence of the existence of all of such claims be furnished.

5. Said Receiver is further authorized and directed to release and surrender to the lawful owners thereof (1) all oil and gas stored within the receivership area which is shown by evidence satisfactory to him to have been produced by operations outside of said area; (2) all machinery, tools and other equipment stored within the receivership area when the Receiver took possession and not actually used in the production, storage, transportation, etc., of the oil and gas products thereof, and such other machinery, tools, drilling rigs and similar apparatus found within the receivership area as may not be required for the receivership operations; (3) all oil, gas and the products thereof which are shown by evidence satisfactory to the Receiver to have been produced by operations outside of the receivership area, but which were mingled and stored with similar products produced within said area on and subsequent to April 1, 1920.

6. Said Receiver is further authorized and directed (1) to arrange for the sale and disposition of all oil, gas,

gasoline, water, and other products of said property; (2) to take possession and license the operation of all toll bridges within the receivership area, and to regulate and limit the tolls chargeable thereon; (3) to sell at the best price obtainable, properly credit and account for, such derricks, tanks, pipe lines, tools, appliances and materials not claimed by the owners thereof and not required for the Receiver's operations; (4) to purchase at the best price obtainable such tanks, machinery, appliances, tools, motor cars, and equipment, as may be necessary for the operation, protection, and development of the property in his charge; (5) to retain and employ whatever technical or other assistants he may require or may deem necessary to satisfactorily operate, develop and protect the property in his charge, fix the terms of employment and the rate of compensation; (6) to make such banking arrangements as he may deem necessary to properly conserve and safeguard the funds resulting from his operations and to invest the surplus funds in United States Treasury certificates; (7) to make such contracts for fire, tornado, employee and public liability insurance as may be deemed necessary or advisable and take whatever other reasonable precautions are customarily employed in the management, operation, development, and protection of oil and gas properties of similar magnitude.

7. The Receiver is hereby further authorized and directed to drill in the river-bed area described in paragraph 3 hereof, and bring into production whatever new wells he may be advised by his geologist and other experts are necessary for the conservation and development of the river-bed lands as a whole, pay the cost thereof out of the funds in his hands derived from the production of the wells in said river-bed area, keep separate accounts of the costs of drilling and operating and of the proceeds of the production of each well, and make a full report thereof, with his recommendations for the equitable allocation and distribu-

tion of such costs and proceeds, as soon after the court reconvenes in October next as may be practicable.

8. In addition to the specific powers herein contained, the Receiver, until the further order of this court, is hereby given whatever additional administrative powers may be found to be necessary to properly protect, operate, manage and develop the property within the receivership area and the oil and gas deposits therein.

9. The Receiver is directed to report to the court, for such action as it may deem necessary and proper, any interference with the property or operations in his charge and any violation of the orders and directions given by him in the performance of his official duties; and he may apply in vacation to the Chief Justice or any Associate Justice of this court for a writ of injunction in any case where an injunction might be granted by the court.

10. Nothing in the order of this court of April 1, 1920, or in this order shall be construed to prevent or in anywise obstruct the duly constituted authorities of the United States and of the States of Texas and Oklahoma in the exercise of their several and respective jurisdictions, as heretofore, in the prevention, detention and punishment of crime within the area embraced within the orders of this court.

The parties thereto and their respective officers and agents are requested to afford to the Receiver and his agents all reasonable and appropriate assistance in guarding, protecting, and conserving the property within said area.

*Order Granting Leave to File Petitions in Intervention.*

THE motions of the Judsonia Developing Association, Burk Divide Oil Company No. 2 and others, Burk Divide Oil Company No. 3 and others, and Mellish Consolidated Placer Oil Company, for leave to file petitions in interven-

tion herein, are hereby granted; and similar leave is granted to any and all other parties claiming any title to or interest in the lands in the possession of the Receiver herein by virtue of the orders of April 1, 1920, and June 7, 1920.

*Order Setting Cause down for Hearing upon Certain Questions of Law, Directing the Taking of Testimony and Appointing Commissioner.*

On consideration of the motion of the United States and the State of Oklahoma, requesting that this cause be set down for hearing at an early day upon certain questions of law, and of the response of the State of Texas to said motion, this day presented,

It is ordered that this cause be and it is hereby set down for hearing on the fifteenth day of November, 1920, upon the following questions of law, to wit:

(1) Is the decree of this court in *United States* v. *The State of Texas*, 162 U. S. 1, final and conclusive upon the parties to this cause in so far as it declares that the Treaty of 1819 between the United States and Spain fixed the boundary along the south bank of Red River?

(2) If said decree is not conclusive, then did the Treaty of 1819, construed in the light of pertinent public documents and acts, fix the boundary along the mid-channel of Red River or along the south bank of said river?

It is further ordered that the parties be permitted to take and present testimony in respect of the governmental practice on the part of all governments and States, concerned at the time, bearing upon the construction and effect of said Treaty as to the second question above stated.

The evidence in chief of the United States and the State of Oklahoma shall be taken and closed on or before August 15, 1920; the evidence in chief of the State of Texas

shall be taken and closed on or before October 1, 1920; and rebuttal testimony on the part of the United States and the State of Oklahoma shall be taken and closed on or before October 15, 1920. The evidence in each case to be taken on seven days' notice, unless notice is waived.

Ernest Knaebel, Esq., of the District of Columbia, is hereby appointed as Commissioner to take the said evidence and report the same to the court, without findings or conclusions.[1]

---

[1] Mr. Knaebel could not serve and Frederick S. Tyler, Esq., of the District of Columbia, was appointed by order of the Chief Justice, June 30, 1920.