**WEST v. WORK, Secretary of the Interior, et al.***

(Court of Appeals of District of Columbia. Submitted January 8, 1926. Decided March 1, 1926.)

No. 4288.

1. Mines and minerals ⏋6—Statute held only to declare new policy for disposition of mineral lands, disposition of which was not otherwise provided for, and claimant thereunder of land declared agricultural and subject to disposition as such was not entitled to mining permit (Act Feb. 25, 1920, §§ 1, 13, 14 [Comp. St. Ann. Supp. 1923, §§ 4640¼, 4640¼ff, 4640¼g]; Rev. St. § 2319 [Comp. St. § 4614]; Act May 2, 1890, §§ 18, 22 [Comp. St. §§ 5020, 5023]; Indian Appropriation Act March 3, 1891, § 16 [Comp. St. § 5027]; Act March 4, 1923, §§ 5, 6 [Comp. St. Supp. 1925, §§ 4640¼jj(5), 4640¼jj(6)]; Indian Treaty Oct. 21, 1867 [15 Stat. 581]; Act June 6, 1900 [31 Stat. 672]; Act June 5, 1906 [34 Stat. 213]).

Act Feb. 25, 1920 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ss), only declared new public policy as to disposition by lease of lands open to exploration or entry, and section 1 thereof, declaring that named minerals and lands containing them, "owned by the United States," should be disposed of as therein provided, in view of Supreme Court's holding that similar language, "all lands belonging to the United States," found in Rev. St. § 2319 (Comp. St. § 4614), applied only to lands, disposition of which was not otherwise provided for, is inapplicable to lands in Oklahoma, south of medial line of Red river, which were declared to be agricultural and subject to settlement under homestead and townsite laws by Oklahoma Enabling Act May 2, 1890, §§ 18, 22 (Comp. St. §§ 5020, 5023), and Indian Appropriation Act March 3, 1891, § 16 (Comp. St. § 5027), nor was it intended to repeal such acts, and claimant of location on such lands under such 1920 act was not entitled to prospecting permit, in view of sections 1, 13, 14, thereof (Comp. St. Ann. Supp. 1923, §§ 4640¼, 4640¼ff, 4640¼g), and Act March 4, 1923, §§ 5, 6 (Comp. St. Supp. 1925, §§ 4640¼jj [5], 4640¼jj [6]), Indian Treaty Oct. 21, 1867 (15 Stat. 581), Act June 5, 1900, and Act June 5, 1906.

2. Statutes ⏋158.

Repeals by implication are not favored.

Appeal from the Supreme Court of District of Columbia.

Suit by Charles West against Hubert Work, Secretary of the Interior of the United States, and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

E. P. Keech, Jr., of Baltimore, Md., and S. C. Peelle and C. F. R. Ogilby, both of Washington, D. C., for appellant.

*Certiorari denied 46 S. Ct. 639, 70 L. Ed ——.

C. E. Wright, D. V. Hunter, and O. H. Graves, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

GRAHAM, Acting Associate Justice. Appellant filed his bill in equity against the appellees in the Supreme Court September 13, 1924. In and by this bill he alleged, in substance: That he is a citizen of the United States, and that on the 6th day of March, 1920, he made a location upon and entry of 2,560 acres of unsurveyed land, within the state of Oklahoma, which land was then the property of the United States, and which was not within any known geological structure of a producing oil or gas field, and all of which lie south of the medial line of the Red river, and between said medial line and the south bank of said river. That thereafter he did all acts required by the provisions of the Act of February 25, 1920 (Comp. St. Ann. Supp. 1923, §§ 4640¼–4640¼ss), hereinafter more particularly referred to, and the rules and regulations of the Department of the Interior, to procure an oil and gas exploration permit thereunder. That immediately after filing his application for a permit he began drilling for oil upon said land, in which operations he expended, in good faith, approximately $8,000, and was then compelled to desist at the command of a receiver appointed by the Supreme Court of the United States, in which court said lands were then involved in litigation. That at the time said application for permit was filed there were no prior or conflicting claims, and said lands were not subject to any riparian rights. That the said pending litigation in the Supreme Court was between the state of Texas and the state of Oklahoma, and involved a question of sovereignty only, and not property rights. That subsequent to appellant's entry an intervening petition was filed in said cause by the United States, claiming title to said lands, and a receiver was appointed by said Supreme Court. That the receiver forthwith took possession of the lands herein involved. That the receiver was discharged June 20, 1924.

Appellant further alleges: That, shortly after his application for permit was filed, because of departmental instructions, and because of the pendency of said litigation, it was rejected by the Commissioner of the General Land Office, but that on September

8, 1920, the Secretary of the Interior reversed his former decision and directed the Commissioner: "Upon careful consideration of the entire matter, I have reached in conclusion that the interests of the United States, as well as those of the appellants here, warrant and require a modification of the instructions of June 18, 1920, and you are accordingly authorized and directed to suspend each and all of the applications herein described pending the outcome of litigation involving the ownership and status of the lands upon which the claims are laid." That by an order entered in the cause aforesaid, dated June 7, 1920, the Supreme Court authorized and permitted the intervention of all persons claiming any right in the premises involved in said litigation to set up their claims. That many interveners appeared, but that appellant did not intervene, resting upon his rights under the said Act of February 25, 1920. That the Supreme Court thereafter held and decided that title to said lands was in the United States and denied the rights of all interveners.

He further alleges: That no intervener's claimed rights were based on the said act of 1920, and that therefore any rights appellant may have have not been adjudicated. That thereafter the Act of March 4, 1923 (Comp. St. Supp. 1925, §§ 4640jj[1]–4640jj[7]), hereinafter more particularly referred to, was enacted, and immediately thereafter, to wit, March 6, 1923, the appellee Commissioner issued an order attempting to reject appellant's claim. That appellant appealed, and the rejection was affirmed by the Secretary of the Interior August 29, 1923. That the appellant is, by law, entitled to a permit under said Act of February 25, 1920, but that the appellees are now about to issue permits covering said lands to other parties, under the supposed authority of said Act of March 4, 1923.

The bill prays for an injunction to restrain the appellees from issuing a prospecting permit upon said lands to other persons than appellant, a mandatory injunction to compel the issuance of a permit to appellant under said Act of February 25, 1920, and for other relief.

Appellees entered their motion to dismiss the bill upon the following grounds: (1) That the lands in question were not subject to disposition under the mining laws or under the Act of February 25, 1920, when the application of appellant was filed. (2) The appellant did not bring himself within the provisions of the Act of March 4, 1923, by his bill. (3) That the action of the appellees, being discretionary, cannot be controlled by the courts. The court granted the motion, basing such action upon the first and second averments of the motion, and entered a decree dismissing the bill. From that decree appellant appeals.

[1] The land involved in this appeal is a part of a tract of the public domain which has been the source of extended litigation. It is situated in that portion of the bed of the Red river which lies south of the medial line of the channel thereof, and between that line and the south bank of said river. In 1890, pursuant to authority of Congress, a suit was instituted in the Supreme Court of the United States against the state of Texas to fix and determine the boundary between Greer county, in said state, and what was then the territory of the United States and is now a part of the state of Oklahoma. United States v. Texas, 16 S. Ct. 725, 162 U. S. 1, 40 L. Ed. 867. As a result of that litigation, the said boundary line was determined to be the south bank of said river. Oklahoma was admitted as a territory May 2, 1890 (26 Stat. 81), and as a state November 16, 1907; its boundary line in the locality involved here being identical with the boundary line between the state of Texas and the territory of the United States, as fixed by United States v. Texas, supra. By sections 18 and 22 of the act admitting Oklahoma as a territory, it was expressly provided that the lands contained therein were open to settlement under the homestead and townsite laws of the United States. 26 Stat. 90, 91 (Comp. St. §§ 5020, 5023).

Indian Appropriation Act March 3, 1891, § 16 (26 Stat. 1026 [Comp. St. § 5027]), provided: "All the lands in Oklahoma are hereby declared to be agricultural lands, and proof of their nonmineral character shall not be required as a condition precedent to final entry."

Later rich deposits of oil were found in the bed of the Red river. At once many conflicting claims to these lands were made, and disorder and lawlessness prevailed. The state of Texas, and persons claiming under her, asserted certain rights to a part of these lands. Thereupon the state of Oklahoma initiated certain proceedings in the Supreme Court of the United States against the state of Texas to settle the controverted question of title and to more definitely establish the boundary line. Thereafter a decree was entered in said cause, declaring the boundary line of Oklahoma to be the south bank of the

Red river. Oklahoma v. Texas, 41 S. Ct. 420, 256 U. S. 70, 65 L. Ed. 831; Id., 41 S. Ct. 539, 256 U. S. 608, 65 L. Ed. 1114.

During the progress of this suit it became apparent that much litigation would be avoided by a settlement of conflicting titles therein. Therefore, as stated by appellant in his bill, the United States was permitted to intervene by order entered March 29, 1920. 40 S. Ct. 353, 252 U. S. 372, 64 L. Ed. 619. A general order was also entered in the same matter June 7, 1920, permitting all persons having any claims of any kind to any of the lands in the bed of said Red river to intervene. 40 S. Ct. 580, 253 U. S. 471, 64 L. Ed. 1015, 1017. Many intervening claimants submitted their claims. As a result of these various orders, a broad and exhaustive investigation of the titles to these lands was undertaken by the Supreme Court. The conclusions of that court were stated in the very comprehensive opinion of Mr. Justice Van Devanter in Oklahoma v. Texas, 42 S. Ct. 406, 258 U. S. 574, 66 L. Ed. 771, and we think dispose of the issues here involved.

The Supreme Court calls attention to the fact that the lands in Oklahoma abutting upon the Red river and immediately north of the receivership tract were lands originally conveyed as tribal lands to the Kiowa, Comanche, and Apache Indians (15 Stat. 581), afterwards allotted in severalty, and with a large tract of land in common (31 Stat. 672), finally opened to limited entry by Act June 5, 1906 (34 Stat. 213), and were restricted expressly as to their southern boundary by the words "middle of the main channel" and "mid-channel," thereby giving evidence of the congressional intent to not include the portion of the river bed south of the medial line in these various acts of conveyance, but to retain title to the same in the United States. The Supreme Court therefore held that the titles of the riparian owners in Oklahoma extended only to the medial line of the river, and that the portion of the bed of said river between the medial line and the south bank had never been conveyed or opened to entry or settlement by any treaty or law of the United States.

Many claims based on placer mining locations were before the court. These claimants were relying upon section 2319, R. S. (Comp. St. § 4614), which is:

"Sec. 2319. All valuable mineral deposits in *lands belonging to the United States,* both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States." (The italics are ours.)

The court points out that the language, "lands belonging to the United States," is not as comprehensive as its language indicates, but must be held to apply only to such lands as have been held for disposal by the United States, and that it "never applies where the United States directs that the disposal be only under other laws." The court then calls attention to the Acts of May 2, 1890, and March 3, 1891, hereinbefore cited, and by which all the lands in Oklahoma could be disposed of only under the homestead and townsite laws and were declared to be agricultural lands. The court concludes: "We conclude that this part of the river bed never was subject to location or acquisition under the mining laws—nor, indeed, to acquisition under any of the land laws—and therefore that these locations were of no effect and conferred no rights on the locators or their assigns."

Language could not well be plainer and more definite than this. But appellant argues that the Act of February 25, 1920 (41 Stat. 437), cannot properly be designated as a mining or land law, but was the expression of a new national policy, to permit the exploration of oil fields wherever they might be found on the public domain, except as expressly provided by said act. That act is entitled "An act to promote the mining of coal, phosphate, oil, oil shale, gas, and sodium on the public domain." Section 1 is, in part:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that deposits of coal, phosphate, sodium, oil, oil shale, or gas, and lands containing such deposits owned by the United States, including those in national forests, but excluding lands acquired under the act known as the Appalachian Forest Act, approved March 1, 1911 (Thirty-sixth Statutes, page 961), and those in national parks, and in lands withdrawn or reserved for military or naval uses or purposes, except as hereinafter provided, shall be subject to disposition in the form and manner provided by this act to citizens of the United States. * * *"

Section 13 of the act provides for the issuance of permits for exploration of lands, section 14 for leases of the same, and section 37 provides that disposal of the various minerals and lands named in the act can only be made under the provisions of the act, reserving the rights of claimants under pending claims.

[2] It will be noted the language of section 1, quoted, is much like that of section 2319, R. S., heretofore quoted. The language in both is "lands belonging to the United States," and as to which the Supreme Court said: "It never applies where the United States directs that the disposal be under other laws." As we have seen, Congress expressly provided that lands in the state of Oklahoma should be disposed of under the homestead and townsite laws, and should be considered as agricultural lands. The Act of February 25, 1920, does not expressly repeal the provisions of said acts. Repeals by implication are not favored. The construction which more comports with reason is that the Act of February 25, 1920, was not intended to and did not repeal the specific provisions of law regulating the disposal of lands within the state of Oklahoma, including the lands in question, or other specific provisions of laws as to particular parts of the public domains. The Act of February 25, 1920, was rather the expression of a new policy for the disposition of public lands open to exploration or entry, by lease, instead of by complete alienation.

A consideration of the various provisions of the act approved March 4, 1923 (42 Stat. 1448), leads to the same conclusion. That act is entitled, in part: "An act to authorize the Secretary of the Interior to issue to certain persons and certain corporations permits to explore, or leases of, certain lands that lie south of the medial line of the main channel of Red river, in Oklahoma." Section 1 authorizes the Secretary of the Interior to adjust and determine the equitable claims of citizens to oil and gas deposits in the territory in question, which were claimed or possessed and upon which expenditures were made prior to February 25, 1920. Obviously this provision limits the relief to those who were claiming under the mining laws of the United States as they existed prior to the passage of the Act of February 25, 1920, and therefore does not apply to appellant's claim. Particularly significant is the language of section 5. Here, after making the provisions of the Act of February 25, 1920, applicable where possible, this follows: "Provided,

that after the adjudication and disposition of all applications under this act any lands and deposits remaining unappropriated and undisposed of shall, after date fixed by order of the Secretary of the Interior, be disposed of in accordance with the provisions of said Act of February 25, 1920."

There is here no recognition of any existing rights under the Act of February 25, 1920; in fact, we can come to no other conclusion than that Congress was intending that any rights thereunder must be acquired after the Secretary of the Interior had fully adjudicated claims under acts in force prior to the time the Act of February 25, 1920, became law. If it be true, as argued by appellant, that these lands were subject to disposal under said act of 1920, then no such direction to so dispose of them as appears in said section 5, was necessary; they would have been subject to disposal thereunder without further legislation. But here is a positive direction of law pointing out how they shall be disposed of.

No other meaning can be derived from this than that Congress intended, for the first time, to extend the operation of the Act of February 25, 1920, to these lands, which, up to that time, were not subject to disposition under any of the mining or land laws of the United States; and this intent is further evidenced by the provisions of section 6 of the said act of 1923, in which it is expressly provided that nothing done under the act should be construed as interfering with the possession of the Supreme Court of said lands, through its receiver, or permitting a disposition of any of them while said litigation is pending in said court. While a similar provision does not appear in the Act of February 25, 1920, it must be assumed that the Congress was advised of the pendency of said litigation, not only when the act of 1923 was enacted, but also when the Act of February 25, 1920, was passed and approved. The receiver was appointed by an order entered April 1, 1920, subsequent to the enactment of the Act of February 25, 1920; but the litigation involving the title to the whole of this tract was pending in the Supreme Court at the time that act became law. In that litigation it was to be determined whether the lands in question were or were not public lands, and open to location, lease, or entry. It can hardly be conceived that Congress, under such circumstances, intended to or did enact a law permitting, or, as appellant here contends, commanding, the leasing of the same pending such litigation, and at a

time when it could not be known whether such lands were a part of the public domain.

We do not find anything in the order of the Secretary of the Interior made September 8, 1920, and suspending appellant's claim pendente lite, which militates against the view we have expressed. There was here no order fixing appellant's rights. The only definite order made therein was that of the Commissioner on March 6, 1923, denying the claim. In any event, an order made September 8, 1920, attempting to invest the appellant with any rights under the Act of February 25, 1920, would, if our views herein expressed are correct, have been ultra vires.

Being of the opinion that the appellant acquired no rights by virtue of his application and proceedings under the Act of February 25, 1920, we find it unnecessary to pass upon the other points discussed.

The decree of the court below is therefore affirmed.