**PAN AMERICAN PETROLEUM COR-PORATION, a corporation,**
Appellant,

v.

**Ed PIERSON, individually and as Supervisor for the State of Wyoming, Bureau of Land Management, Department of the Interior; Cecil L. Hase, individually and as Manager of Cheyenne Land Office, Bureau of Land Management, Department of the Interior; R. P. Rigtrup, individually and as Acting Manager of Cheyenne Land Office, Bureau of Land Management, Department of the Interior; John Doe I, individually and as the Examiner appointed or to be appointed by Manager or Acting Manager, Cheyenne Land Office; and John Doe II and John Doe III, individually and in any capacity they may hold as representatives of the Cheyenne Land Office, Bureau of Land Management, Department of the Interior, Appellees.**

No. 6372.

United States Court of Appeals
Tenth Circuit.

Oct. 28, 1960.

Rehearing Denied Dec. 20, 1960.

A. G. McClintock, Cheyenne, Wyo. (T. J. Files, Casper, Wyo., Virgil C. McClintock and Frank H. Houck, Casper, Wyo., were with him on the brief), for appellant.

A. Donald Mileur, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., John F. Raper, Jr., U. S. Atty., District of Wyoming, Cheyenne, Wyo., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellees.

Before PHILLIPS, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The question presented is whether appellant, Pan American Petroleum Corporation, may maintain an action to enjoin the appellees, officers of the Bureau of Land Management, Department of the Interior, stationed in the State of Wyoming, from proceeding with an administrative action for the cancellation of oil and gas leases held by Pan American. This appeal is from a judgment

of the trial court sustaining a motion to dismiss the complaint.

Pursuant to the Mineral Leasing Act of 1920, as amended,[1] the Secretary of the Interior issued to Walter G. Davis and others oil and gas leases covering portions of the public domain lying in Wyoming. By assignment Pan American became the owner of certain of these leases and the owner of interests in other of such leases. Some of these leases so held in whole or in part by Pan American are presently producing oil or gas, others cover lands known to contain oil or gas, and still others are not producing and not known to contain oil or gas.

The Wyoming State Supervisor of the Bureau of Land Management brought a proceeding, styled a "Contest," in the Wyoming office of that Bureau. Therein it is alleged that Davis and others willfully, falsely and fraudulently procured the issuance and assignment of federal oil and gas leases: (1) for the purpose of enabling Davis and others to obtain leases covering acreage in excess of that permitted by statute and regulations; (2) without disclosing that an agent was involved and without the interest and qualifications of Davis or others being disclosed; and (3) at a time when Davis was not qualified to hold such leases. The complaint prays for the cancellation of the leases. An appropriate notice was served on Pan American, as a party interested in certain of the leases, which required the filing of an answer within 30 days. Before the expiration of that period Pan American brought the instant action in the United States District Court for the District of Wyoming. Jurisdiction exists under 28 U.S.C. § 1331 as the action arises under the laws of the United States and the controversy involves more than the required jurisdictional amount.

Pan American alleges that federal oil and gas leases may not be cancelled by administrative action, that the unauthorized administrative action will cause it great and irreparable damage and will result in the taking of its property without due process of law, and that it has no remedy other than injunctive relief. The complaint asks that the defendant officers be restrained from taking any action to cancel the leases except through a proceeding instituted by the Attorney General of the United States in the United States District Court for the District of Wyoming.

The defendant officers moved to dismiss on the grounds that the complaint fails to state a claim as the leases may be cancelled in an administrative action, that the Secretary of the Interior is an indispensable party, and that Pan American has not exhausted its administrative remedies.

The trial court held that the leases could not be cancelled by administrative action but dismissed the complaint on the ground that the Secretary of the Interior was an indispensable party.[2]

At the outset it should be noted that the government lawyers who appear for the defendant officers of the Bureau of Land Management do not assert the defense of sovereign immunity. Instead they rely upon the doctrine of the indispensable superior officer and say that the action may not be maintained in the absence of the Secretary of the Interior who may be sued only in the jurisdiction of his official residence, that is, the District of Columbia.

■ Sovereign immunity does not prevent a suit against a federal officer who is acting in excess of his authority. The instant action raises the sole question of whether the defendant officers are so acting. Since the decision in United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, the traditional remedy of a person aggrieved by governmental action, and precluded from a suit against the sovereign by the doctrine of immunity, has been a suit against the government officer responsible for that ac-

---

1. 30 U.S.C.A. § 181 et seq.

2. The opinion of the trial court is reported at 181 F.Supp. 557.

tion and such suits have been permitted when the officers have exceeded their statutory powers.[3] The situation here presented is not one of asserted erroneous action within the ambit of statutory authority.[4]

The practical operation of the doctrines of sovereign immunity and indispensable superior officer has presented many difficulties and has evoked much comment among the law writers.[5]

■ The application of the doctrine of the indispensable superior presents practical and legal difficulties. The rejection of the unavailability of the defense of sovereign immunity in a suit against a government officer because of his official conduct should carry with it a realization of the practicality of venue and geography. Recognition of this principle is established by the decision in Shaughnessy, District Director of Immigration and Naturalization v. Pedreiro, 349 U.S. 48, 54, 75 S.Ct. 591, 595, 99 L.Ed. 868, wherein the Court said that its decisions "have established a

policy under which indispensability of parties is determined on practical considerations."[6] If concern is to be given to such practical considerations, and we think they should be given concern, then this action to restrain proceedings in Wyoming for the cancellation of federal oil and gas leases involving land in Wyoming should be maintained in the United States District Court for the District of Wyoming and should not be defeated by the inability of the plaintiff to sue the Secretary of the Interior in that court.

■ Doubt has been cast upon the simplicity of this approach by a complex of decisions by the United States Supreme Court and the lower federal courts in cases involving the question of the indispensable superior. In five decisions the Supreme Court has permitted the action without joinder of the superior[7] and in four other cases has held that a superior was an indispensable party.[8] Williams v. Fanning is often taken as the leading case and is relied upon by Pan American. It will not be helpful

3. West Coast Exploration Co. v. McKay, 93 U.S.App.D.C. 307, 213 F.2d 582, 596, certiorari denied 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123. See also Scully v. Bird, 209 U.S. 481, 28 S.Ct. 597, 52 L. Ed. 899; Atchison, Topeka & Santa Fe R. Co. v. O'Connor, 223 U.S. 280, 32 S. Ct. 216, 56 L.Ed. 436; Philadelphia Co. v. Stimson, Secretary of War, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Waite et al. v. Macy et al., 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892; Santa Fe Pacific R. Co. v. Fall, Secretary of the Interior, 259 U.S. 197, 42 S.Ct. 466, 66 L.Ed. 896; and Work, Secretary of the Interior v. State of Louisiana, 269 U.S. 250, 46 S. Ct. 92, 70 L.Ed. 259.

4. Cf. Larson, War Assets Administrator and Surplus Property Administrator v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 703, 69 S.Ct. 1457, 93 L. Ed. 1628, rehearing denied 338 U.S. 840, 70 S.Ct. 31, 94 L.Ed. 514.

5. E. g. 3 Davis, Administrative Law Treatise, §§ 27.01–27.10 (1958); Hart and Wechsler, The Federal Courts and the Federal System, pp. 1177, 1189 (1953); 48 Calif.Law Rev. 98; and The Doctrine of Indispensable Parties as Applied in Review of Administrative Action, 103 U. Pa.Law Rev. 238.

6. Cf. Gart v. Cole, 2 Cir., 263 F.2d 244, 250, certiorari denied 359 U.S. 978, 79 S.Ct. 898, 3 L.Ed.2d 929. See also Homestake Mining Co. v. Mid-Continent Exploration Co., 10 Cir., 282 F.2d 787.

7. State of Colorado v. Toll, Superintendent of the Rocky Mountain National Park, 268 U.S. 228, 45 S.Ct. 505, 69 L. Ed. 927; Williams v. Fanning, Postmaster of Los Angeles, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Hynes, Regional Director, Fish and Wildlife Service v. Grimes Packing Co., 337 U.S. 86, 69 S. Ct. 968, 93 L.Ed. 1231; Shaughnessy, District Director of Immigration and Naturalization v. Pedreiro, supra. See Ceballos (y Arboleda) v. Shaughnessy, District Director, Immigration and Naturalization Service, 352 U.S. 599, 77 S. Ct. 545, 1 L.Ed.2d 583.

8. Warner Valley Stock Co. v. Smith, 165 U.S. 28, 17 S.Ct. 225, 41 L.Ed. 621; Gnerich et al. v. Rutter, Prohibition Director, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068; Webster v. Fall, Secretary of the Interior, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411; and Blackmar v. Guerre, Regional Manager, Veterans' Administration, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534.

to review the many decisions of the lower federal courts which have applied Williams v. Fanning, but it is fair comment that they have achieved no substantial uniformity of application.[9] As we read Williams v. Fanning, it notes three inquiries which are pertinent in determining the indispensability of a superior officer. These are: (1) Does the relief sought require the superior "to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him"?; (2) Are the subordinates acting in excess of their authority?; and (3) Will the relief sought "expend itself on the public treasury or domain, or interfere with the public administration"?[10]

As to the first, the relief sought by Pan American requires no action by the Secretary or any subordinate. The purpose is to enjoin the cancellation of the leases by administrative action. There is no effort to compel the exercise of any power or authority. Instead, the purpose is to prevent the allegedly wrongful exercise of claimed power and authority. This is not a case like Richman v. Beck, 10 Cir., 257 F.2d 575. The relief there sought would have required the issuance of permits by the Secretary of the Interior for the trailing and grazing of sheep.[11]

Related to the problem of the impact of the decree upon the non-joined superior is the query as to whether effective relief may be obtained by a decree acting upon the subordinate. The administrative proceeding here sought to be enjoined is denominated a "Contest" and is brought under 43 C.F.R. 221 (1954 Supp.).[12] It was instituted by the Wyoming State Supervisor of the Bureau of Land Management, Department of the Interior, and, by the applicable regulations, had to be instituted in Wyoming.[13] The decree thus will affect land within the jurisdiction of the court and will operate against the officers who either instituted or will conduct the proceeding and who are within the jurisdiction of the court. Control over the actions of the local officers will suffice to stop the administrative proceeding. The argument that such subordinates may be left under the command of their superior to do what the court has forbidden was rejected in Williams v. Fanning as being immaterial if the decree will "effectively grant the relief desired by expending itself on the subordinate official who is before the court."[14] Such is the situation here.

The next query is whether the subordinates are acting in excess of their authority. This involves a consideration of the statutes relating to the disposition of the federally-owned oil and gas resources.

The method of disposing of these resources of the public domain was changed by the Mineral Leasing Act of

9. See Williams v. Fanning Revisited, 54 Columbia Law Review 1128.

10. 332 U.S. 493, 68 S.Ct. 189, 92 L.Ed. 95.

11. The decisions in Ogden River Water Users' Ass'n v. Weber Basin Water Conservancy, 10 Cir., 238 F.2d 936, and State of New Mexico v. Backer, 10 Cir., 199 F.2d 426, are not pertinent as they involved the doctrine of sovereign immunity. May v. Maurer, 10 Cir., 185 F.2d 475, was a case where the principal relief sought was an adjudication that certain leased premises were not subject to rent control and the decision was that such relief could not be obtained without joining the superior and that the plaintiff had not exhausted the available administrative remedies.

12. The availability of Part 221 to obtain the cancellation of a federal oil and gas lease is questionable. Section 221.67 provides that the government may initiate contests for "any cause affecting the legality or validity of any entry or settlement or mining claim."

13. Section 221.68 provides that government contests shall be governed by the rules regulating private contests, with exceptions not here pertinent. Section 221.53, relating to private contests, provides that the complaint must be filed in the land office which has jurisdiction over the land involved.

14. 332 U.S. 494, 68 S.Ct. 189, 92 L.Ed. 95.

1920 from the location and patent method provided in the Placer Mining Act [15] to a plan whereby permits were granted for exploration and leases for production.[16] Amendments made in 1935 changed the plan by providing for leases instead of prospecting permits for unproven oil and gas lands.[17] The Mineral Leasing Act was "the expression of a new policy for the disposition of public lands open to exploration or entry, by lease, instead of by complete alienation." [18] Section 27 of the Mineral Leasing Act, as amended,[19] provides, among other things, that if any person holds any interest in any lease in violation of the provisions relating to maximum holdings he may be compelled to dispose of such holding in an appropriate proceeding instituted by the Attorney General in the United States district court for the district in which the leased property is located. Section 31, as amended,[20] provides that, except as otherwise provided, a lease is subject to cancellation in an appropriate proceeding in the United States district court for the district wherein the land is located "whenever the lessee fails to comply with any of the provisions of said sections, of the lease, or of the general regulations promulgated under said sections and in force at the date of the lease." That section further provides that any lease issued after August 21, 1935,[21] shall be subject to cancellation by the Secretary for non-compliance with lease terms "unless or until the land covered by any such lease is known to contain valuable deposits of oil or gas." A Department of the Interior regulation,[22] provides that "[l]eases known to contain valuable deposits of oil or gas may be cancelled only by judicial proceedings in the manner provided in sections 27 and 31 of the act."

The contention of the officers is that sections 27 and 31 have no application to leases procured through fraud and that the Secretary has full authority to cancel a lease which was fraudulently obtained. This authority is said to exist under 5 U.S.C.A. § 485, which charges the Secretary of the Interior "with the supervision of public business relating to * * Public lands, including mines."

■ It is not necessary to explore the extent of the powers of the Secretary over the public lands. Suffice it to say that prior to the establishment of the lease system for mineral lands, those lands, like other public lands, were subject to disposition by patent and, upon the issuance of patent, administrative control ceased and the patent could be set aside or cancelled only by judicial proceedings in the courts.[23] This rule is said not to be applicable in the instant case because upon the issuance of a patent title passes from the United States to the patentee whereas under the Mineral Leasing Act the United States retains legal title.

We deem it unnecessary to delve into the legal complexities as to whether an oil and gas lease grants a profit a prendre or creates an estate in land. Under the first theory the lessee gains title to the oil and gas after its severance and under the second the lessee has an ownership of the hydrocarbons in place. Under each theory the government, by the issuance of the lease, has performed the last act required of it to vest in the lessee the right to explore for, produce, market and sell the oil and gas underlying the leased premises. Similarly the issuance of a patent is the last act of the government in disposing of the non-mineral lands of the public domain. Upon the

15. 30 U.S.C.A. §§ 35–37, 16 Stat. 217, 17 Stat. 94.

16. See 4 Summers, Oil and Gas, § 869, p. 295.

17. 30 U.S.C.A. §§ 221, 223, 223a, 226 and 185, 49 Stat. 674.

18. West v. Work, 56 App.D.C. 191, 11 F. 2d 828, 831, certiorari denied 271 U.S. 689, 46 S.Ct. 639, 70 L.Ed. 1153.

19. 30 U.S.C.A. § 184.

20. 30 U.S.C.A. § 188.

21. All leases involved in this litigation were issued after that date.

22. 43 C.F.R. 192.161(c) (1954 Supp.).

23. Michigan Land & Lumber Co. v. Rust, 168 U.S. 589, 593, 18 S.Ct. 208, 42 L. Ed. 591; Moore v. Robbins, 96 U.S. 530, 533, 24 L.Ed. 848.

performance of this last act, administrative power to annul or cancel ends and judicial power begins. The difference between a patent and an oil and gas lease is no reason for the denial of the power of administrative cancellation of a patent and for the recognition of such power to cancel a lease, unless Congress in the exercise of its authority over the public lands [24] has provided for such administrative cancellation of leases after issuance. The only provision of this nature in the Mineral Leasing Act and its amendments, of which we are aware, relates to administrative cancellation of non-producing oil and gas leases issued after 1935 for breach of lease provisions,[25] and that has no application here because cancellation is sought for fraud in procurement, not for breach of any lease provisions.

■ If there may be administrative cancellation of an oil and gas lease for fraud in procurement, the practical operation of the Mineral Leasing Act is seriously impaired. It is common knowledge that exploration for oil and gas is costly. The drilling of wells requires substantial financial risks and the expense of putting those wells on production and of marketing the product is burdensome. If the continued existence of the granted leasehold estate is dependent upon the fluctuating policies of governmental departments uninhibited by any limitations upon time of action,[26] the value of federal oil and gas leases as a title basis for oil and gas development is greatly diminished if not practically destroyed. No prudent operator would be willing to accept the financial risks if he were subject to ouster because of some administrative decision based upon improper conduct of an assignor occurring at some distant time in the past.[27]

■■ The Secretary of the Interior has no powers except those granted or those necessarily implied from granted powers. As "the guardian of the people of the United States over the public lands" [28] it is his obligation to see that neither patents nor leases are procured by fraud. The courts have repeatedly held that he is without power to annul a patent once it has issued. That power is reserved to the courts. In the absence of some statutory provision giving him power to annul leases under the Mineral Leasing Act, that power also is reserved to the courts. Otherwise the new system created by the Mineral Leasing Act for the disposition of the mineral reserves found on the public lands fails of its purpose. Certainty of title is an elementary prerequisite for the sound development of any mineral resource.

We find it unnecessary to explore the legislative history of the Mineral Leasing Act or of the amendments thereto, either proposed or enacted. Such of that history as has been called to our attention is without persuasive effect. Most significant is the fact that the 1960 amendments [29] make no change in the pertinent provisions even though the question of administrative cancellation was presented and considered.[30]

---

24. U.S.Const. Art. 4, § 3; Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791.

25. 30 U.S.C.A. § 188.

26. Suits to annul patents must be brought within six years from issuance. 43 U.S.C.A. § 1166.

27. Cf. Moore v. Robbins, supra, 96 U.S. at page 534.

28. Knight v. United States Land Ass'n, 142 U.S. 161, 181, 12 S.Ct. 258, 264, 35 L.Ed. 974.

29. Act of Sept. 2, 1960, P.L. 86-705, 30 U.S.C.A. §§ 181 et seq., 182, 184, 187a, 226, 226-1, 226-2, 226d, 226e, 241.

30. H.Rept. No. 1401, 86th Cong., 2d Sess., covering proposed amendments to the Mineral Leasing Act, contains the following: "A major committee amendment strikes out all of paragraphs (1) and (2) of subsection (h) of section 27, as amended by H.R. 10455, dealing with the cancellation, forfeiture, and compelled disposition of interests held in violation of the act, and related matters, and substitutes the present language of the law for that which was proposed in the bill. The committee recognizes that the meaning of this language is under current dispute. The plaintiffs in certain cases pending or recently pending in the

■ As we conclude that the defendant officers and their superior, the Secretary of the Interior, are without statutory authority, either express or implied, to cancel or annul federal oil and gas leases by administrative proceedings taken after the issuance of such leases and because of any conduct of a lessee which preceded such issuance, we are not concerned with the contention that Pan American has failed to exhaust its administrative remedies. It cannot exhaust something which it does not have.

Government counsel for the local federal officers further urge that the Secretary is indispensable because the action seeks to interfere with the obligation of the Secretary to protect the public domain against the encumbrance of fraudulently obtained oil and gas leases and, hence, will expend itself on the public domain and interfere with public administration in violation of one of the criteria established by Williams v. Fanning.[31] The decree sought will not, and cannot, establish any right in Pan American to any interest in any public lands. It will not interfere with any administrative proceeding that is authorized by statute. It leaves the Secretary free to protect the public domain from the encumbrance of fraudulently procured leases by the institution of proper judicial proceedings in which ancillary relief pending determination may be obtained if warranted. The judicial remedy is adequate and available.

■ The defendant officers contend that the complaint is without merit because there has been no enjoinable interference with any property right of Pan American and, until that occurs, Pan American has sustained no injury justifying injunctive relief. The answer is that the administrative proceeding for cancellation clouds Pan American's title and, thus, has an adverse effect on the exploration for and the development of the oil and gas resources and on the marketability, not only of the leases but also of the production therefrom. There exists an actual controversy cognizable in a court of equity and injunction is an appropriate remedy.[32] The defendant officers threaten by action which we hold to be in excess of their authority to cancel Pan American's leases. If the threats are carried out the injury will be great.[33] In such a situation the officers cannot claim immunity from the injunctive process.[34]

This is not a case involving administrative proceedings specifically provided by statute,[35] nor is it a case involving supervisory powers of the Secretary prior to the issuance of patent or lease.[36] The decisions in McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 226 F.2d 35, and Seaton v. Texas Co., 103 U.S.App.D.C. 163, 256 F.2d 718, are not helpful. In the first, the authority of the Secretary to cancel a lease in an administrative proceeding was not involved and the court ordered cancellation. In the second, the court avoided the question of

U. S. District Court for the District of Wyoming have questioned the asserted authority of the Secretary of the Interior to cancel or forfeit oil and gas leases in an administrative proceeding. The committee believes that any legislation further fixing jurisdictional boundaries in this field between the judiciary and the executive should await the outcome of, and be based upon the experience gained through, the pending actions."

31. See also Land, Chairman, United States Maritime Commission v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209.

32. Cf. Florida Lime & Avocado Growers, Inc. v. Jacobsen, Director of the Department of Agriculture, 362 U.S. 73, 85, 80 S.Ct. 568, 4 L.Ed.2d 568.

33. The brief for the officers does not dispute that the lands covered by the leases contain valuable oil and gas deposits and that some are presently producing oil and gas.

34. Philadelphia Co. v. Stimson, Secretary of War, supra, 223 U.S. at page 620, 32 S.Ct. at page 344.

35. Cf. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638.

36. Cf. United States ex rel. Roughton v. Ickes, 69 App.D.C. 324, 101 F.2d 248.

the general power of the Secretary to cancel a lease after issuance and held that in the situation presented the cancellation "was not valid administrative action."[37] In a later decision, McKenna v. Seaton, 104 U.S.App.D.C. 50, 259 F.2d 780, 784, certiorari denied 358 U.S. 835, 79 S.Ct. 57, 3 L.Ed.2d 71, the same circuit held that "a fair common denominator * * * of the conditions which will cause judicial repudiation of administrative action by the Secretary, is at least that he is plainly wrong." As we see the case at bar, his subordinates were plainly wrong as they were acting in excess of their lawful authority.

There is a suggestion in the brief presented by government counsel that the issuance of an injunction in this case will interfere with the power of the Secretary to conduct an investigation. No such result is intended. The Secretary has the unquestioned power to investigate. If the results of that investigation justify action for cancellation, that action must be brought in court and not before the agency which makes the investigation. If Congress desires administrative cancellation of federal oil and gas leases, it may, in the exercise of its constitutional authority over the public domain, so provide in appropriate legislation, but we have no such legislation before us.

The judgment sustaining the motion to dismiss and dismissing the case is reversed and the cause is remanded for further proceedings consistent with this opinion.

On Petition for Rehearing

PER CURIAM.

The appellees have filed a petition for rehearing which does not comply with the rules of this court and appellants have moved to strike that petition. While it is difficult to understand the failure of government counsel to follow the rules, the motion to strike is denied and the petition is ordered filed.

This case involves the administrative cancellation of an oil and gas lease for fraud by lessees in procurement. The comments of counsel relating to the authority of the Secretary to cancel for administrative errors or for breaches of lease provisions are beside the point and merit no consideration. We adhere to our view that the Secretary and the defendant officials are without authority to cancel an oil and gas lease for fraud of a lessee precedent to lease issuance.

The request for hearing before the court en banc and the petition for rehearing are denied.