James S. GARVEY, Plaintiff,

v.

Orville L. FREEMAN, the Secretary of Agriculture of the United States of America, W. Harold Tuttle, F. H. Hallock and Raymond M. Frazee in their capacities as members of the Kiowa County, Colorado Agricultural Stabilization and Conservation Committee, Arthur Isgar, Charles Hanavan, Jr., and Dewey Carnahan, in their capacities as members of the Agricultural Stabilization and Conservation Committee of the State of Colorado, Defendants.

Civ. A. No. 9392.

United States District Court
D. Colorado.
Feb. 1, 1967.

Holland & Hart, J. G. Holland, Frank H. Morison, Dwight K. Shellman, Jr., and William J. Carney, Jr., Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., and William E. Gandy, Asst. U. S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CHILSON, District Judge.

The plaintiff seeks judicial review of the normal wheat yields per acre established by the Department of Agriculture for five of plaintiff's farms in Kiowa County, Colorado, which yields determine the amount of plaintiff's benefits under the Federal Wheat Program of 1965.

The history of the wheat program insofar as it pertains to this case reveals that after the farmers, in 1963, rejected at a referendum a proposed mandatory wheat program, Congress, in April 1964, provided a voluntary wheat program (7 U.S.C. § 1334 et seq.). Under this program, producers who comply with certain requirements are eligible to receive wheat marketing certificates which enables producers to receive, in addition to the sale price of their wheat, an amount equal to the value of such certificates. Producers who do not want to participate in this program are free to produce wheat without being subject to any marketing quota or land use penalties.

The statute provides that the wheat marketing certificates to which a producer is entitled is based in part on the normal per acre yield for the farm. Congress authorized the Secretary of Agriculture to promulgate such regulations as may be necessary to provide for the issuance of the wheat certificates. Pur-

suant to this authority, the Secretary issued regulations establishing normal yields for the years 1964–65 for the wheat producing counties of the country, including Kiowa County, Colorado. On August 15, 1965, the normal yield for Kiowa County was established at 19.5 bushels, which was one bushel less than the 1964 normal yield for that county.

The Congressional Act (7 U.S.C. § 1301 (b) (13) (E)) provided that the normal yield of wheat for any farm shall be the average yield per acre for the farm:

> "during the five years immediately preceding the year in which such normal yield is determined in the case of wheat, adjusted for abnormal weather conditions and for trends in yields. If for any such year the data are not available or there is no actual yield, then the normal yield for the form shall be appraised in accordance with regulations issued by the Secretary, taking into consideration abnormal weather conditions, trends in yields, the normal yield for the county, the yields obtained on adjacent farms during such year and the yield in years for which data are available."

Pursuant to statutory authority, the Secretary of Agriculture established regulations whereby a County Committee shall determine normal yields per acre for wheat farms in its county (7 C.F.R. 728.-21) with a right of appeal from the County Committee to a State Committee (A.S.C. State Committee) and from the State Committee to the Deputy Administrator (7 C.F.R. § 780.4 and 780.5).

The County Committee is directed to determine the normal yield for any farm on the basis of its actual production records, if they are available and reliable. Otherwise, the County Committee is directed to appraise the normal per acre yield of the farm, taking into consideration the factors set forth in 7 U.S.C. § 1301(b) (13) (E), supra.

In this case, the County Committee, in the absence of production by plaintiff of records of actual production, used the appraisal method to establish the normal per acre yield for plaintiff's farms. The normal per acre yield for four of the farms was set at 18 bushels and for the fifth farm at 17 bushels (Exhibit B). The plaintiff requested reconsideration of these determinations by the County Committee and requested that the normal yield for all of the farms be increased to 20 bushels per acre (Exhibit C). The County Committee considered the request for an increase, denied it and advised the plaintiff of his right to appeal to the Colorado A.S.C. State Committee. The plaintiff took an appeal to the State Committee (Exhibit E) on the grounds:

1. Determination was not made in accordance with the Rules and Regulations of the Department of Agriculture.
2. Similar farms in Kiowa County, Colorado have normal yields of 20 bushels and more while the normal yield for plaintiff's farm is determined to be 18 bushels as to four farms and 17 bushels as to the other.

A hearing was held by the Colorado State Committee on December 16, 1964 (Exhibit G) at which plaintiff presented documentary and oral evidence in support of his contentions that the normal yields as established were too low in comparison with adjacent farms. In addition to the hearing, the State Committee, at the request of plaintiff, made two inspection trips to the plaintiff's farms and thereafter affirmed the County Committee's determination in the following words:

> "The Colorado State ASC Committee have determined that the 1965 Wheat Program normal yields as established by the Kiowa County ASC Committee are equitably established. Therefore, your request for an increased normal yield is denied.

> "This determination is based upon the fact that after the State Committee made extensive tours and observed the Garvey farms in relation to other farms in Kiowa County it was their determination that the appraised established yields reflect the Garvey farms' correct productivity in relation

576

to yields established for other similar farms." (Exhibit H.)

The plaintiff then appealed to the Deputy Administrator, who after a hearing (Exhibit N) affirmed the normal yield determination in the following terms:

"Following the hearing for these appeals on April 27, 1965, we made a further examination of the comparisons used by the local county committee in establishing judgment yields for the 12 farms. Particular emphasis was given to any indication that the owners of the 12 farms had been discriminated against in the matter of establishing yields.

"Based on a current tabulation, 267 wheat allotment farms in Kiowa County have 1965 established yields of less than 17 bushels. The tabulation also shows that 55 or more farms which are participating under the conservation reserve program have established wheat yields above 18 bushels for 1965. Thus, there is a reasonable spread of yields above and below those determined for Garvey Farms. Those and other factors indicate that the Kiowa ASC County Committee applied reasonable judgment in determining yields reflecting comparative productivity between farms in the county.

"As you know, any producer had the opportunity to prove a 1965 wheat yield by presenting valid evidence of actual production in the years 1959 through 1963, inclusive. By choice, your appeals at the county, State and national level, were based on a comparison with yields established for similar farms by your county committee.

"We have taken into account the data you submitted and we have questioned closely the basis for decision at the county and State levels. Our analysis, since you did not offer records showing the amount of wheat produced in each of the base years, had to be responsive to the contention that local committees discriminated against you. Since there appears to be sincere but conflicting opinions about farming methods, availability of equipment, and the effect of wind erosion on yields on all Kiowa County farms, we have undertaken to ascertain actual facts demonstrating discrimination or absence thereof in your case.

"Our extensive review indicates opportunity for reasonable differences in opinion on the factors to be considered by the local committees under the regulations but such review does not reveal any evidence that the owners you represent were subjected to bias or discrimination at either the State or county level. Therefore, we must affirm the determination you have received since it represents judgments based on local knowledge of production and farming practices and has resulted in yields established in accordance with regulations governing the program." (Exhibit O.)

Thereafter, the plaintiff requested the Deputy Administrator to reopen the hearing and reconsider the matter (Exhibit P). This request was denied in the following words:

"We understand and appreciate your dissatisfaction with our determination of your appeal. However, the evidence and testimony you submitted for our consideration failed to show that the wheat yields currently established for the plaintiffs' farms were less than the normal wheat production per acre from these farms.

"We will be glad to reopen your appeal at any time you submit documentary proof that the actual average wheat yield for one or more of these farms exceeds the yield established for the farm. Otherwise, we have no basis for revising the determination of which you were notified by our letter dated June 25, 1965." (Exhibit Q).

Plaintiff thereafter instituted this action seeking judicial review of the determinations made by the administrative agencies on two principal grounds: First, that because of numerous errors in procedures, he was denied procedural

due process; and second, that there is no substantial evidence to support the administrative agency's normal yield determination.

The defendants filed a motion to dismiss the complaint. Both the plaintiff and the defendants have filed motions for summary judgment.

Extensive briefs were filed by the parties in support of and in opposition to the motions and on January 5, 1967, the Court heard oral argument on the various motions and took the matter under advisement.

Defendants' motion to dismiss is based on three grounds:

1. The Court lacks jurisdiction because Congress did not intend a judicial review of the administrative agency's determinations.

2. This is an "unconsented suit" against the United States.

3. The complaint fails to state a claim upon which relief can be granted.

The defendants contend that since there is no specific provision in the Congressional Act establishing the voluntary wheat program, that this is an indication of Congressional intent that there should be no judicial review of agency action and, particularly, in view of the fact that the previous mandatory wheat program specifically provided for judicial review.

■ We are satisfied that the Court has jurisdiction to make a judicial review in this case and in so doing, the Court recognizes the rule cited by the defendants in Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297 at 301, 64 S.Ct. 95, 88 L.Ed. 61 (1943) and Heikkila v. Barber, 345 U.S. 229 at 233, 73 S.Ct. 603, 97 L.Ed. 972, which states, in effect, that where Congress has not expressly authorized judicial review, the type of problem and the history of the statute and its purpose are to be considered in determining whether or not judicial review exists.

■■ The Court is satisfied that the plaintiff in this case has a definite, personal right created by the wheat legislation to participate in the program if the plaintiff so desires and upon exercising the option to participate, he has a right of which the Court should take cognizance, in accordance with the rule stated in Stark v. Wickard, 321 U.S. 288 at 309, 64 S.Ct. 559 at 570, 88 L.Ed. 733:

> "When, as we have previously concluded in this opinion, definite personal rights are created by federal statute, similar in kind to those customarily treated in courts of law, the silence of Congress, as to judicial review is, at any rate in the absence of an administrative remedy, not to be construed as a denial of authority to the aggrieved person to seek appropriate relief in the federal courts in the exercise of their general jurisdiction."

■■ The Court also determines that its jurisdiction is not barred by the doctrine of sovereign immunity. It is well established that the exemption of the United States from suit does not protect its officers acting without or in excess of their authority. See Pan American Petroleum Corp. v. Pierson, 284 F.2d 649 (10th Cir.), and cases cited therein.

The Court determines it has jurisdiction to review the acts here in question.

■ The complaint in effect alleges the defendants have deprived plaintiff of procedural due process and that their determinations have no support in the evidence. Such allegations, if proven, would entitle the plaintiff to relief. The complaint states a claim upon which relief can be granted.

The Court concludes the motion to dismiss should be denied.

The Court finds that there is no genuine issue of material fact necessary to be determined in order to determine this action upon its merits and that the action should be determined upon the motions of the parties for summary judgment.

As we have previously noted, the plaintiff's attack is essentially two-pronged. One is directed at the procedure and the other at evidence upon which the agency acted.

We first consider alleged errors of procedure.

■ Plaintiff contends that since the County Committee was limited in the amount of relief it could give on a reconsideration on appeal, that he was entitled to a comparative hearing with other farmers in the county. Plaintiff cites in support thereof Ashbacker Radio Corp. v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945). We need not consider the applicability of the Ashbacker decision to this case for although the County Committee was limited in the relief it could grant on appeals, there is no contention that the State Committee or the Deputy Administrator was so limited or that the plaintiff could not be afforded complete relief on the merits of his claim without regard to the normal yields established for other producers in the county.

■ Plaintiff also contends he was denied access to county records of normal yield determinations of some of the farms in Kiowa County. This matter was brought to the attention of the Deputy Administrator (Exhibit N, pages 257 and 259), but the plaintiff's expert (Mr. Fadely), who desired this information, when asked if the additional information was available to him now would it help in presenting the appeal, stated that the material which he had obtained was adequate to present his point (Exhibit N, pages 270 and 271).

■ Plaintiff also complains that he was denied access to the County Committee's report. The record shows this report was furnished to plaintiff at the hearing before the Deputy Administrator (Exhibit N, pages 295 and 296).

■ The plaintiff further contends that the administration of this program by a County Committee composed of producers who are also eligible for participation in the wheat program denies the plaintiff procedural due process. The authorities cited by plaintiff in support of this proposition, in the Court's opinion, are not applicable to the administration of this type of aid program, and particularly so since the determinations of the County Committee are not final. Every producer has the right of appeal from the County Committee's determination, first, to the State Committee and secondly, to the Deputy Administrator.

In these circumstances, the Court concludes that the fact that the County Committee may be beneficiaries of the program did not deny the plaintiff procedural due process.

The plaintiff complains of other matters which he alleges deprived him of a fair hearing. As to these matters it is sufficient to say that the Court has considered the entire record, including the transcripts of the hearings before the State Committee and the Deputy Administrator and although the record is not a model of excellence, the Court finds that the plaintiff had ample opportunity to present his contentions and his evidence and that he had a fair and adequate hearing and one which complied with the requirements of procedural due process.

There remains then to determine whether or not the administrative agency's determination was arbitrary and capricious and without evidentiary support.

The plaintiff had the option of having his normal yield determined either upon the actual yields of his farms or by appraisal of the normal yields by the County Committee. The plaintiff elected to take the appraised yields.

The record discloses without dispute that the plaintiff used farming methods and practices considerably different from those of other farmers in the County. The County Committee found that the farming methods used by the plaintiff, the large amount of land which he farmed and the availability of equipment therefor, did not produce yields per acre comparable to those where the farming units were smaller and different and more intensive methods of cultivation were used. The plaintiff is of the opin-

ion that his farming methods were as productive as those of the average farmer in the county.

Plaintiff's counsel, Mr. Schmidt, concisely stated the point in issue when he stated:

"In the first place, you take your community committeeman, they have a responsibility to go out and set these. Now, in our judgment, their judgment was wrong. Now, since we consider their judgment wrong, we have the right to appeal to the county committee. Now, the county committee says that * * * the community committee is right * * *

"I think they put us where they thought we ought to be, and we are saying they're wrong * * * We think that we are doing just as good a job as the average farmer." (Exhibit G, page 52.)

The County Committee's judgment was affirmed by the judgment of the State Committee after the hearing of evidence and an inspection of plaintiff's farms.

The Deputy Administrator found no bias or discrimination at either the County or State level and affirmed the determination of the normal yields.

■ We find there is sufficient evidence in the record to sustain the appraisal of plaintiff's normal yield and that the determination was not arbitrary or capricious or the result of bias or prejudice.

The Court concludes that the motion of plaintiff for a summary judgment and the defendants' motion to dismiss should be denied and that defendants' motion for summary judgment should be granted.

It is therefore ordered that the defendants' motion to dismiss the complaint and plaintiff's motion for summary judgment are hereby denied.

It is further ordered that defendants' motion for summary judgment is hereby granted and judgment in favor of the defendants and against the plaintiff shall enter forthwith.